OPINION OF THE COURT
Chief Judge Kaye.
On this appeal we revisit a familiar subject: whether a member of the public can recover damages against a municipality for its employee’s negligence. Here we answer that question in the negative.
The Facts
Three-year-old Andrew Lauer died on August 7, 1993. That same day, Dr. Eddy Lilavois, a New York City Medical Examiner, performed an autopsy and prepared a report stating that the child’s death was a homicide caused by “blunt injuries” *98 to the neck and brain. Although the report indicated that the brain was being preserved for further examination, the following day a death certificate was issued stating that Andrew’s death was a homicide. Based on the Medical Examiner’s conclusion, the police began investigating what they thought was a homicide, focusing primarily on plaintiff, Andrew’s father. Weeks later, on August 31, 1993, the Medical Examiner and a neuropathologist conducted a more detailed study of Andrew’s brain. The report, prepared in October 1993, indicated that a ruptured brain aneurysm caused the child’s death, thus contradicting the earlier conclusion. The Medical Examiner, however, failed to correct the autopsy report or death certificate, and failed to notify law enforcement authorities.
Meanwhile, the Police Department’s investigation into Andrew’s death continued. Some 17 months later, in March 1995, after a newspaper exposé, the autopsy findings were revised, the police investigation ceased and an amended death certificate was prepared. As a result of this incident, the City Medical Examiner who had conducted the examination resigned. Plaintiff and his estranged wife subsequently commenced separate actions. Lisa Lauer’s action against the City of New York and Dr. Lilavois, seeking damages for intentional and negligent infliction of emotional distress, was dismissed. In affirming the dismissal, the Appellate Division held that her allegations failed to establish “that she fell within any recognized orbit of duty upon which liability may be based” (see, Lauer v City of New York, 240 AD2d 543, 544, lv denied 91 NY2d 807).
In the present action seeking $10 million in damages against the City of New York, the Office of the Chief Medical Examiner, Dr. Lilavois and the Police Department, plaintiff alleges defamation, violation of his civil rights, and both negligent and intentional infliction of emotional distress. He claims that defendants’ conduct — including the Medical Examiner’s negligent performance of the autopsy, failure to correct the erroneous report and death certificate, and failure to disclose that Andrew’s death was not a homicide — “precipitated the destruction of [his] marriage * * * forced him to sell his home and leave his neighborhood, and caused him to become the object of public scorn, humiliation, ridicule, embarrassment, harassment and contempt throughout the City of New York.” He further alleges that he “sustained severe and debilitating emotional distress, emotional anguish, anxiety and mental suffering.”
*99 On defendants’ motion, Supreme Court dismissed the defamation and civil rights causes of action, but allowed plaintiff to pursue his emotional distress claims. A divided Appellate Division modified Supreme Court’s order (see, 258 AD2d 92). All of the Justices agreed that the defamation and civil rights claims were properly dismissed. They also unanimously concluded that plaintiffs intentional infliction of emotional distress claim warranted dismissal; that any causes of action based on performance of the initial autopsy were immunized as a governmental exercise of discretion; and that the Medical Examiner’s failure to correct the reports and accurately inform the authorities were “ministerial” acts. The Appellate Division divided, however, as to whether plaintiff could maintain a claim for negligent infliction of emotional distress based on those ministerial acts, a majority concluding that he could. Viability of that single remaining claim is the issue now before us on this appeal.
The Law as Applied to the Facts
Analysis begins with several undisputed propositions. Municipalities long ago surrendered common-law tort immunity for the negligence of their employees. A distinction is drawn, however, between “discretionary” and “ministerial” governmental acts. A public employee’s discretionary acts— meaning conduct involving the exercise of reasoned judgment— may not result in the municipality’s liability even when the conduct is negligent. By contrast, ministerial acts — meaning conduct requiring adherence to a governing rule, with a compulsory result — may subject the municipal employer to liability for negligence (see, Tango v Tulevech, 61 NY2d 34, 40-41). No one disputes that the Medical Examiner’s misconduct here in failing to correct the record and deliver it to the authorities was ministerial.
There agreement ends. Plaintiff contends that the City should be liable for the Medical Examiner’s “ministerial negligence,” while defendant urges that the complaint be dismissed.
We do not agree with plaintiff that a ministerial breach by a governmental employee necessarily gives rise to municipal liability. Rather, a ministerial wrong “merely removes the issue of governmental immunity from a given case” (supra, 258 AD2d, at 111 [Sullivan, J. P., dissenting in part]). Ministerial negligence may not be immunized, but it is not necessarily tortious (see, Tango v Tulevech, supra, 61 NY2d, at 40 [recovery *100 available only if ministerial action “is otherwise tortious and not justifiable pursuant to statutory command” (emphasis added)]; see also, Robertson, Municipal Tort Liability: Special Duty Issues of Police, Fire, and Safety, 44 Syracuse L Rev 943, 945 [“waiver-of-immunity statutes have not created new causes of action where none existed before; they have only removed the shield of governmental immunity where a cause of action would exist if the tort-feasor were a private person”]). There must still be a basis to hold the municipality liable for negligence (see, Florence v Goldberg, 44 NY2d 189, 195 [“Absent the existence and breach of* * * a duty, the abrogation of governmental immunity, in itself, affords little aid to a plaintiff seeking to cast a municipality in damages”]; see also, De Long v County of Erie, 60 NY2d 296 [liability for ministerial failure to process “911” call rested on County employee’s affirmative assurances of assistance made to victim]; 18 McQuillin, Municipal Corporations § 53.04.25, at 165 [3d rev ed]).
This brings us directly to an essential element of any negligence case: duty. Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm (see, Pulka v Edelman, 40 NY2d 781, 785, rearg denied 41 NY2d 901; see also Prosser and Keeton, Torts § 53, at 357 [5th ed]; 3 Harper, James and Gray, Torts § 18.1, at 650 [2d ed]). While the Legislature can create a duty by statute, in most cases duty is defined by the courts, as a matter of policy.
Fixing the orbit of duty may be a difficult task. Despite often sympathetic facts in a particular case before them, courts must be mindful of the precedential, and consequential, future effects of their rulings, and “limit the legal consequences of wrongs to a controllable degree” (Tobin v Grossman, 24 NY2d 609, 619; Strauss v Belle Realty Co., 65 NY2d 399, 402). Time and again we have required “that the equation be balanced; that the damaged plaintiff be able to point the finger of responsibility at a defendant owing, not a general duty to society, but a specific duty to him” (Johnson v Jamaica Hosp., 62 NY2d 523, 527; see also, Palsgraf v Long Is. R. R. Co., 248 NY 339, 341, rearg denied 249 NY 511).
This is especially so where an individual seeks recovery out of the public purse. To sustain liability against a municipality, the duty breached must be more than that owed the public generally (see, Florence v Goldberg, supra, 44 NY2d, at 195; Smullen v City of New York, 28 NY2d 66, 70; see also, 18 McQuillin, Municipal Corporations § 53.04.25, at 165, supra). *101 Indeed, we have consistently refused to impose liability for a municipality in performing a public function absent “a duty to use due care for the benefit of particular persons or classes of persons” (Motyka v City of Amsterdam, 15 NY2d 134, 139). Here, because plaintiff cannot point to a duty owed to him by the Office of the Chief Medical Examiner, his negligence claim must fail.
Pointing to New York City Charter § 557, plaintiff argues that the Office of the Chief Medical Examiner owed him a duty to communicate accurate information to authorities pertaining to his son’s death. Section 557 charges the Chief Medical Examiner with examining “bodies of persons dying from criminal violence” or other suspicious circumstances, keeping “full and complete records in such form as may be provided by law,” and promptly delivering “to the appropriate district attorney copies of all records relating to every death as to which there, is, in the judgment of the medical examiner in charge, any indication of criminality.”
Violation of a statute resulting in injury gives rise to a tort action only if the intent of the statute is to protect an individual against an invasion of a property or personal interest (Steitz v City of Beacon, 295 NY 51, 56; see also, O’Connor v City of New York, 58 NY2d 184, 189-190; Motyka v City of Amsterdam, supra, 15 NY2d, at 139).
In Steitz v City of Beacon (supra, 295 NY 51), for example, plaintiff sought to recover damages suffered as a result of a fire, relying on a City Charter provision requiring maintenance of a fire department. We concluded that liability could not be predicated on the Charter provision, which was not designed to protect the personal interest of any individual, but rather was “designed to secure the benefits of well ordered municipal government enjoyed by all as members of the community” (id., at 55). We explained that:
“An intention to impose upon the city the crushing burden of such an obligation should not be imputed to the Legislature in the absence of language clearly designed to have that effect.
* * *
“Such [City Charter] enactments do not import intention to protect the interests of any individual except as they secure to all members of the com *102 munity the enjoyment of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals” (id., at 55-56).
New York City Charter § 557 similarly defines one of the municipality’s governmental functions. It establishes the Office of the Chief Medical Examiner as part of the City’s Department of Health, and requires performance of autopsies and preparation of reports for the benefit of the public at large. Significantly, the only individual to whom the Medical Examiner must by statute report is “the appropriate district attorney” (see, New York City Charter § 557 [g]). Neither plaintiff, nor other members of the general public who may become criminal suspects upon the death of a person, are persons “for whose especial benefit the statute was enacted” (see, Motyka v City of Amsterdam, supra, 15 NY2d, at 139). Permitting recovery here would rewrite section 557, radically enlarging both the responsibility of the Office of the Chief Medical Examiner and the potential liability of the City.
Nor do we find any duty to plaintiff derived from a “special relationship” with him. A “special relationship” requires:
“(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking” (Cuffy v City of New York, 69 NY2d 255, 260).
The “direct contact” and “reliance” requirements are particularly important, as they rationally define and limit the class of persons to whom the municipality’s “special duty” extends (id., at 261).
Those requirements are not met here. The Medical Examiner never undertook to act on plaintiffs behalf. He made no promises or assurances to plaintiff, and assumed no affirmative duty upon which plaintiff might have justifiably relied. Plaintiff alleges no personal contact with the Medical Examiner, and therefore also fails to satisfy the “direct contact” requirement of the test. There is, moreover, no indication that the Medical *103 Examiner knew that plaintiff, or anyone else, had become a suspect in the case. Nor do Medical Examiners generally owe a “special duty” to potential homicide suspects. Their function in this context is not as a law enforcement agency but solely to impart objective information to the appropriate authorities for the benefit of the public at large (see, People v Washington, 86 NY2d 189, 192-193).
As we explained in De Angelis v Lutheran Med. Ctr. (58 NY2d 1053, 1055):
“A line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit. It is always tempting, especially when symmetry and sympathy would so seem to be best served, to impose new duties, and, concomitantly, liabilities, regardless of the economic and social burden. But, absent legislative intervention, the fixing of the ‘orbit’ of duty, as here, in the end is the responsibility of the courts.”
Here, in order for plaintiff’s claim for negligent infliction of emotional distress to be successful, we would have to impose a new duty on the Office of the Chief Medical Examiner, which for the future would run to members of the public who may become subjects of a criminal investigation into a death. This we refuse to do.[1]
The Dissents
Fixing the orbit of duty has likely divided this Court more than any other issue. The present case is no exception, as evidenced by two dissenting opinions. Were the issue solely one of “humanistic intuition” or “moral duty,” the result might well be otherwise. Our responsibility, however, is to set the particular case before us into its carefully developed precedential *104 framework, mindful always of the opportunities the common law allows for refinements to assure that the rule or principle that emerges is a sound one.
Here we cannot agree with our dissenting colleagues that a duty to plaintiff is found under existing law. The Smith dissent, urging that the “special relationship” test has been satisfied, assumes “extensive contact”, between plaintiff and the Medical Examiner that is not borne out by the record.[2] Nor can we agree with the dissenting Judges’ proposed new duty, based on negligent initiation of a course of events with foreseeable harm. This is simply not a prudent expansion of the law.
Neither Wagner, nor Moch, nor Crosland — the dissenters’ case law pivots — supports such a duty. In Wagner v International Ry. Co. (232 NY 176, 180), danger did indeed invite rescue, but significantly there was a recognized duty owed by defendant railroad directly to its passenger, who was the subject of the rescue; there was no comparable relationship between plaintiff and the Medical Examiner. In Moch Co. v Rensselaer Water Co. (247 NY 160, 168), the Court acknowledged that launching “a force or instrument of harm” might constitute legally cognizable negligence. Any liability for such conduct, however, nonetheless required a recognized duty on the part of the municipal defendant running to the plaintiff. Indeed, Moch exemplifies the principle we apply today: the Court there dismissed plaintiffs claim, concluding the action was “not maintainable as one for a common-law tort” because defendant waterworks company — having contracted to supply water to the City — owed no duty directly to the plaintiff when the water supply failed and its warehouse was destroyed.
Finally, Crosland v New York City Tr. Auth. (68 NY2d 165, 169-170), addressing the standard of care owed by a publicly owned common carrier to its passengers, is also readily distinguishable. Relying on Public Authorities Law § 1212 (3), which authorizes private recovery against the Transit Authority for the negligence of its employees in the operation of the subway system, the Court in Crosland held that defendant could be liable for its employees’ negligent failure to summon aid while *105 watching, from a position of safety, a passenger beaten to death. As we made clear in Kircher v City of Jamestown (74 NY2d 251, 254-255, n 1), the City’s statutory responsibility was key to our holding in Crosland. There is no similar responsibility here.
Among the many concerns courts have in enlarging the ambit of duty — especially in the area of municipal liability — is concern for the consequential effects of their decision. The Bellacosa dissent insists that its proposed heightened duty is “inevitably narrowed” and “pinpointed,” owing to a “relatively self-defined, small circle of potential suspects” — indeed, “extending] only to this plaintiff.” We cannot agree that this is so. In our view, allowing emotional distress claims against a municipality for an official’s negligent failure to transmit correct information to law enforcement authorities conducting criminal investigations in this case will have far-reaching effects in future cases. As is already evident, the argument for the next case quickly becomes “The duty of care that this Court recognized in [Lauer] places the duty that ought to be recognized in this case within the realm and contemplation of that precedent” (see, e.g., Bellacosa, J., dissenting opn, at 118).
In the end, plaintiff’s claim is not supported by existing law, and we cannot agree that the proposed enlargement of the orbit of duty, resting largely on the foreseeability of harm, is a sound one.
Accordingly, the order of the Appellate Division should be reversed, without costs, the complaint dismissed and the certified question answered in the negative.

. This Court has been especially reluctant to broaden the concept of duty where, as here, the injury alleged is negligently inflicted emotional injury (see, e.g., Johnson v Jamaica Hosp., supra, 62 NY2d, at 530). The dissenting Judges would unduly expand the narrow, limited class of cases where we have permitted recovery for emotional injury based on the long-established, common-law duty to next of kin with respect to the death of close family members (see, Smith, J., dissenting opn, at 114, citing Johnson v State of New York, 37 NY2d 378, 381-382; Darcy v Presbyterian Hosp., 202 NY 259). Those cases, however, do not support the quite different duty urged here, which would make a municipality liable, for emotional injury, to an open-ended plaintiff class of potential suspects in criminal investigations.

. Sorichetti v City of New York (65 NY2d 461) is in no way analogous (see, Smith, J., dissenting opn, at 113). In Sorichetti, a special relationship between the City and infant plaintiff arose out of an order of protection, plus the City’s knowledge — through direct dealings with the family — of the specific danger to the child, plus the City’s instructions to the mother on the day of the assault, plus her reasonable expectation that the police would protect them (id., at 469).