*406 OPINION OF THE COURT
Richard E. Sise, J.
The instant claim flows from claimant’s arrest on or about July 15, 1999 by the Niskayuna Police Department allegedly based upon a bench warrant issued by the Troy City Court for failing to pay a fíne. Claimant alleges the warrant should have been vacated or recalled upon her payment of a fine to the Troy City Court on April 14, 1998. Following her transfer from the Niskayuna Police Department to the Troy Police Department, claimant was brought before a judge of the Troy City Court on the morning of July 16, 1999. According to claimant, the judge dismissed the charges and apologized to her (verified claim, U 21). By decision and order dated December 14, 2001, the court granted claimant permission to late file a claim for the alleged negligence of the defendant in not recalling or vacating the warrant.
The court conducted a bifurcated trial and this decision addresses only the issue of liability.
At the start of the trial, the parties entered into stipulations which provided the core facts giving rise to this claim.[1] Based upon those stipulations the court finds as follows:
On February 12, 1996, claimant was issued tickets by Troy Police for passing a red light (Troy City Code § 28-7) and for aggravated unlicensed operation of a motor vehicle (Vehicle and Traffic Law § 511 [2]) and arrested. On April 18, 1997, claimant entered a guilty plea to a reduced charge and was fined $200 with a $25 surcharge and was given until September 1, 1997 to pay the amount due. The amount due was not paid; consequently, on March 12, 1998, an arrest warrant was issued by Troy City Court. On April 14, 1998, claimant paid the fine to the Troy City Court and the warrant was to be cancelled. However, the warrant was not cancelled on the NYSPIN (New York State Police Information Network). Diane Hulett, Chief Clerk of the Troy City Court, accepted the payment from claimant on April 14, 1998 and her initials (DAH) appear on the computerized receipt. Deputy Clerk Eugenia Robillard marked the arrest warrant “cancel paid in full 4/98” followed by her initials “ERR.” The Niskayuna Police Department arrested claimant on the warrant on July 15, 1999 at approximately 11:30 p.m. and transported her to the Troy Police Department where claimant was placed in a holding cell at 12:30 a.m. on *407 July 16, 1999. When bail was posted in the early morning hours, claimant was released and was issued an appearance ticket. Claimant appeared in Troy City Court on July 16, 1999 pursuant to CPL 410.30 (declaration of delinquency). When the court learned she had paid the fine, the charge was dismissed.
Claimant called to testify Diane Hulett, Chief Clerk of the Troy City Court since 1989, and Eugenia Robillard, Deputy Chief Clerk for the city courts located within the Third Judicial District. She was assigned to all city courts in the Third Judicial District since 1988. Finally, claimant called to testify Sergeant William F. Wade a 30-year employee of the Troy City Police Department and long time supervisor of the record section. The court personnel testified to their customary procedures for issuance and cancellation of warrants and their actions regarding claimant’s warrant. Sergeant Wade testified to Troy Police Department procedures for receiving and cancelling a warrant from Troy City Court, the operation of the NYSPIN computer and the processing of claimant on July 16, 1999.
Diane Hulett testified that approximately three times a year, the clerk’s office reviews its files and, using a computer generated form, prints warrants[2] for a judge’s review and signature. Once a warrant is signed, the customary procedure is for the clerk’s office to make a copy of the warrant for its file and the original warrant is placed in a wire basket for pick up by the Troy Police Department. The customary procedure to cancel a warrant, when as in the instant case a fine is paid at the court clerk’s office, is for the court personnel accepting payment to get the clerk’s file from the warrant drawer, process payment at the cash register and generate a cash register receipt (exhibit 6), and validate the payment on the docket card (exhibit 1), which is a permanent record. That same individual also takes the clerk’s file copy of the warrant and marks it “cancel” and makes a photocopy of the cancelled warrant. Then the so marked copy is placed in the wire basket for the Troy Police Department and the newly made copy is placed in the clerk’s file. Hulett testified that once the cancelled warrant is placed in the wire basket the clerk’s job is done. The only record of the warrant cancellation in the clerk’s office is the newly made copy of the warrant — the clerk’s office does not maintain a running or chronological log to record what warrants are placed into the wire basket. There is no procedure for court personnel to follow *408 up with the police department to ascertain whether a warrant has been removed from the NYSPIN database. Hulett was unaware whether the Office of Court Administration (OCA) had any written procedures for court clerk’s to follow in vacating or cancelling warrants.
Hulett had no personal recollection of the transaction involving claimant, although from the records she was able to ascertain that she accepted the payment. Hulett testified that the copy of the warrant (exhibit 7) in the court file indicated that it came from the police department as it had the police department’s warrant identifier number on it and Hulett surmised that at the time the warrant was initially issued, the clerk’s office had failed to make a copy for its file. Hulett’s “only explanation”[3] for Deputy Clerk Eugenia Robillard’s failure to write “cancel” on the warrant upon receipt of payment of the fine by claimant, was that the copy was not in the file when she accepted payment “so I told her [Robillard] to cancel when we get it” from the police department. Hulett had no personal knowledge that the cancelled warrant was placed in the basket.
On cross-examination Hulett, after reviewing claimant’s docket card, reiterated that as far as the court was concerned the warrant was cancelled upon payment. As clerk, she had no authority over the Troy Police Department or what information was entered into the NYSPIN computer.
Eugenia Robillard also testified that she had no personal recollection of the events surrounding the cancellation of claimant’s warrant but acknowledged that it was her handwriting and initials on the cancelled warrant (exhibit 7). Robillard agreed that it was her responsibility to put the cancelled warrant in the basket and court file. As deputy chief clerk assigned to all the city courts in the Third Judicial District (which included, inter alia, Cohoes, Albany, Watervliet, Hudson) Robillard testified that the courts had different procedures for vacating warrants and that to her recollection, OCA did not issue procedures to follow when vacating warrants.
Sergeant William F. Wade testified that as record room supervisor the NYSPIN computer was under his auspices and explained that there is a NYSPIN officer who must use a code to access the computer. NYSPIN is used by police officers to run *409 plate checks, license checks, warrants and missing persons. The NYSPIN officer worked the 6:00 a.m. to 2:00 p.m. tour of duty. Officer Robert Quinlan, the assigned NYSPIN officer, was on vacation in April 1998, with Officer Ed Downing filling in for him. The Troy Police Department maintained a NYSPIN officer’s log (exhibit 8 [Apr. 10, 1998 to Apr. 20, 1998]). Wade testified that on a daily basis the NYSPIN officer would pick up materials from Troy City Court and that it was in the NYSPIN officer’s discretion how many other times he went to the basket to pick up materials. Wade testified that when a warrant was cancelled by the court, the NYSPIN officer would pick up the cancelled warrant from the basket and cancel it on the NYSPIN system by entering a “d” into the computer. The officer would also collect the “warrant jacket,” which contained a copy of the warrant, from the sergeant’s desk. Following entry into NYSPIN, he would dispose of the warrant and would also make an appropriate entry into the log (exhibit 8). Warrants would be cancelled “as soon as you get them.”
Wade worked the midnight tour as desk sergeant on the night claimant was arrested. He testified, based upon review of the documentary evidence relating to claimant, that the warrant affecting claimant had not been cancelled by April 20, 1998. The copy of the warrant in his file did not contain any writing upon it indicating that it had been cancelled and to his knowledge the police department had not received a warrant marked cancelled (exhibit 7). He explained that the copy produced by the clerk’s office (exhibit 7) came from the police department as it contained the warrant number and year (281-98) which was placed upon the warrant when received and logged by the police department. Wade stated the warrant was not removed from NYSPIN “most likely because we were not notified ... by police court.”[4] On cross-examination, Wade testified that if a warrant had been cancelled through the police court and the police department had been notified, the department would have destroyed the original warrant and the jacket copy. If however, there is an arrest, as here, the original warrant is attached to the original arrest report (exhibit 10) and they, together with two copies of the arrest sheet, are sent to police court. The police department does not keep a log of materials retrieved from the basket in the court clerk’s office.
*410 Defendant’s sole witness was the claimant, who testified that she “knew she had this hanging over her head” as she had “called the Clerk’s Office several times” and learned “that a warrant could be issued and that one was issued.” It was for this reason she went in to pay the fine in April 1998. Claimant testified she went in person to the window and paid by check. She advised court personnel that there was a warrant in her name and she wanted to pay her fine. Claimant inquired whether paying the fine would take care of the warrant and was advised, “Yes. We’ll take care of it.”
It is settled that liability may flow from the negligence of nonjudicial employees in performing their ministerial duties (see Marx v State of New York, 169 AD2d 642 [1991] [housing court clerks lost file and failed to alert marshal; petition of dispossession dismissed]; Ostrowski v State of New York, 186 Misc 2d 890 [2001] [court clerk failed to note payment of fine resulting in improper arrest, strip search and confinement]; see also Boland v State of New York, 218 AD2d 235, 244 [1996] [there is ample authority for imposing liability upon the State based upon the negligent performance of a ministerial act]) and, as this court has held, from the State’s transmission of inaccurate information to police agencies (see Sankara v State of New York, Ct Cl, Claim No. 102035, Motion No. M-63054; [unreported decision, Sise, J.], June 13, 2001).
Defendant argues that the instant acts of the Troy City Police Court Clerks are cloaked with either judicial immunity or quasi-judicial immunity (defendant’s brief at 7) as such acts were “an integral part of the judicial process” (Weiner v State of New York, 273 AD2d 95, 98 [2000]). In Weiner, relied upon by defendant, the Appellate Division, after concluding the claim was precluded as a matter of law based upon Family Court Act § 216-c, offered that the actions of the clerk in assisting in the preparation of the petition constituted the processing of legal proceedings, which is generally viewed as “quasi-judicial” and therefore immune from suit. Here, however, the acts of the clerks were not the preparation of judicial process — for example the preparation of the warrant itself — rather, the at issue act was the transmittal of the already recorded cancellation to the police department. The judicial decision-making process had ended leaving the clerks with the ministerial duty to transmit information about a concluded proceeding to ensure an individual’s liberty would not be jeopardized. The transmittal of information, or the failure to do so, on these facts is not an integral *411 part of the judicial process which would warrant application of judicial immunity (see Steel v State of New York, 307 AD2d 919 [2003] [erroneous transmittal of sentencing determination not integral part]; Ostrowski v State of New York, supra).
The testimony of the court personnel and police officer is credible and facially, as pointed out by defendant, would appear to lead to the conclusion that either party was responsible for the failure of the warrant to be recalled based upon their respective standard procedures. Such a result, as correctly noted by defendant would result in claimant having failed to sustain her burden of proof and the claim necessarily would be dismissed. However, the court finds that responsibility for claimant’s arrest on the warrant lies with the Troy City Police Court. Notwithstanding the presumption of regularity relied upon by defendant (see Gardam & Son v Batterson, 198 NY 175 [1910]; Prince, Richardson on Evidence § 3-120 [11th ed]), certain irregularities lead the court to find that the cancelled warrant was not transmitted to the police department for removal from the NYSPIN computer (A & B Serv. Sta. v State of New York, 50 AD2d 973, 974 [1975], lv denied 39 NY2d 709 [1976] [question of whether the letter was properly mailed would become, at most, an evidentiary question]). In the first instance, the regular procedure was not followed on April 14, 1998 as the person who accepted payment of the fine did not cancel the warrant. This deviation from the procedure was necessitated by another irregularity — the absence of a copy of the warrant in the court’s file as evidenced by the police department’s notations on the cancelled warrant produced by the police court. Morever, the court finds it more than curious that the warrant cancellation is merely dated “4/98” and does not bear a specific day as well. In the court’s view, a properly and timely cancelled warrant would bear the day of cancellation and not just the month. All of the foregoing is exacerbated by the failure of the court system to have a standard procedure in place in the city police courts for transmitting cancellation information to the police department. Given the liberty interest at stake, a uniform procedure with, at a minimum, a log to indicate that a cancelled warrant was placed into the police basket, would enable the courts to affirmatively establish its duty was discharged, and insulate the defendant from liability.
Based upon the foregoing, the court finds that claimant has established by a preponderance of the credible evidence that defendant owed a duty to claimant to transmit the warrant cancel *412 lation information to the police agency, that such duty was ministerial in nature, that defendant failed to transmit such information, that such failure constituted a breach of the duty owed and that such breach was a proximate cause of claimant’s injury on July 15, 1998. The court further finds that claimant, who had direct contact with the court clerk, justifiably relied upon her payment as eliminating the possibility of arrest on the warrant (see Lauer v City of New York, 95 NY2d 95 [2000]). The court therefore finds that the defendant is 100% liable for claimant’s injuries.
Let interlocutory judgment be entered accordingly.
All motions not previously ruled upon are denied.

. The parties also stipulated into evidence exhibits 1-14.

. The warrants were alternately called “bench” or “arrest” warrants. The court will simply refer to them as warrants.

. Unless otherwise noted, all quotations are from the court’s notes or the audio recording of the proceedings.

. The term “police court” is interchangeable with the term “city court” as used throughout this decision.