OPINION OF THE COURT
Shirley Werner Kornreich, J.
Plaintiff in this negligence action, Anastasia Joliet Renee Brown, is a minor represented by her adoptive mother Myrtle Brown. Defendant Harlem Dowling-Westside Center for Children and Family Services (HDWC) is an agency that contracts with the City of New York to provide foster care services. Defendant Administration for Children’s Services is a nonjusticiable agency of defendant City of New York, the real party in interest (together the City). HDWC and the City each move for summary judgment and dismissal of the complaint. HDWC relies on attorneys’ affirmations and exhibits, including the transcript of plaintiff’s examination before trial (EBT), progress notes of agency caseworkers, and various documents regarding the drug rehabilitation and training of plaintiffs birth mother. The City relies on an attorney’s affirmation and exhibits, including transcripts of plaintiffs EBT and EBTs of two witnesses for the City, and an operations manual for city caseworkers in the Division of Adoption and Foster Care Services. Plaintiff relies on an attorney’s affirmation, an affidavit of psychiatrist Richard J. Francis, M.D., additional affidavits and numerous exhibits, including: transcripts of EBTs of plaintiff and two witnesses for the City, plaintiffs bills of particulars, HDWC progress notes, HDWC and City notes and documents, toxicology and lab reports, Family Court documents, and school records. The motions are consolidated for disposition.
I. Background and Undisputed Facts
Plaintiff filed her complaint on or about June 26, 1998, seeking damages for severe injuries caused by her natural mother (mother or Rhonda) after being permanently discharged by HDWC into her mother’s custody at the age of six. Plaintiff *895 makes the following allegations: (1) HDWC and the City were grossly negligent in their acts, omissions and decisions in returning custody of plaintiff and her older sister to their mother; (2) HDWC and the City were grossly negligent in their acts, omissions and decisions in failing to maintain and execute the permanency goal of adoption for plaintiff and her sister; and (3) the City was grossly negligent in its acts, omissions and decisions with respect to the investigation of reports the City received of Rhonda’s abuse of plaintiff and negligent supervision of all three children then in her custody.
Both HDWC and the City claim their employees have immunity from suit, both under Social Services Law § 419 and the common law, for discretionary acts of public officials. Defendant agencies also claim that the undisputed evidence shows they and their employees are not liable for gross negligence or willful misconduct as a matter of law. Plaintiff argues in response that neither agency can claim statutory immunity under Social Services Law § 419 because their activities were not within the class of activities the statute was meant to immunize, that is the investigation of child abuse and removal of abused children to protective custody. Plaintiff also argues that defendants are not immunized because defendant agencies undertook a special duty to plaintiff and breached that duty, their caseworkers were grossly negligent and failed to do nondiscretionary investigative work, and the defendant agencies are riddled with systemic and known failures placing vulnerable children at serious risk of harm. With respect to HDWC, plaintiff further argues that its motion should be denied because it was filed late and is only supported by an attorney’s affirmation.
The parties seriously dispute the actions undertaken by the defendant agencies in relation to the return of plaintiff and her sister to Rhonda, but there is agreement at least to the following facts:
HDWC is authorized to operate, supervise, assist and provide foster care services in the City of New York. Defendant Administration for Children’s Services (ACS) is responsible for the child welfare divisions of the Human Resources Administration/Department of Social Services in the City of New York. The agency was previously known as the Child Welfare Administration. It is responsible for the investigation of child abuse complaints and for the removal of children and placement in protective custody. A foster care placement and temporary discharge of custody to a parent was monitored by *896 HDWC (or another foster care agency under contract with the City), and a child permanently placed back into the custody of a parent, post-foster care, was monitored by ACS.
Rhonda gave birth to plaintiff in 1989. Plaintiff was two months premature, weighed approximately two pounds, and tested positive for crack cocaine. Two months later, plaintiff and her four-year-old sister were placed in foster care with Helen Hickman, with whom they remained until being returned to Rhonda in 1995. HDWC supervised the foster care placement. While her girls lived in the home of Helen Hickman, Rhonda continued to struggle with her addiction to crack cocaine. It appears that she was not cooperative with drug testing or programs, and she disappeared in April 1991.
Mrs. Hickman wanted to adopt the girls, but Rhonda resurfaced in February 1992 before her parental rights were terminated. Plaintiffs opposing papers include a form filled out by a city attorney after a Family Court appearance by plaintiffs law guardian and two caseworkers on October 15, 1991. The following is written in the section captioned “RESULT OF COURT PROCEEDING”: “CWA & Harlem Dowling ordered to file TPK forthwith.” A “TPK,” according to the affirmation of psychiatrist Richard J. Francis, is a termination of parental rights. This order was issued approximately 3x/2 months before Rhonda resurfaced. Once Rhonda reappeared, HDWC shifted from working toward adoption, to working toward a permanent placement with Rhonda, the birth mother. What ensued is subject to dispute, but HDWC’s papers reflect an ongoing effort to reunite the girls with their mother, who resisted random drug testing and other counseling, but eventually managed a few negative urine tests and to attend an outpatient drug rehabilitation program and a parenting skills class. In June 1995, the girls were temporarily discharged into the custody of their mother and went to live with her, her boyfriend Thomas White Sr. (not the girls’ father), and their toddler Thomas White Jr. Three months later, the temporary discharge was made permanent, and HDWC ended its supervision of plaintiffs welfare.
Approximately 18 months later, Rhonda stripped plaintiff, then seven, and forcibly held her on a hot radiator. Plaintiff sustained severe burns to her hand, the back of her legs, her buttocks and other parts of her body. When she went to school with visible burns, they called the police and all the children were removed from the home and placed into protective custody. Plaintiff was returned to Helen Hickman, her former foster *897 mother, and eventually was adopted by Myrtle Brown and changed her name.
At her EBT, plaintiff testified that while in Rhonda’s custody, the latter repeatedly beat her with fists, brooms and other hard objects, tortured her in various ways, such as forcing her to sit naked on a chair in a room with all the windows open during winter, to stand up all night on one leg for prolonged periods, holding her head under water or suffocating her with a pillow, and spraying air freshener in her eyes. She threatened to kill plaintiff if she told anyone what was going on. She kept plaintiff out of school for prolonged periods, and forced her to clean house, cook and do other chores. Plaintiff became increasingly hungry and dirty, and she and her sister had to care for themselves. City caseworkers came to the apartment to check a few times after people complained, but they never spoke with plaintiff alone. When asked within earshot of Rhonda, plaintiff denied that anything bad was going on. She went to school once badly injured on the back and legs and the school nurse and principal called Thomas Sr. When he came to the school, he threatened to kill them and carried plaintiff out.
II. Discussion and Rulings
A. HDWC’s Motion
HDWC filed its summary judgment motion on or about November 2, 2007, approximately 147 days after the June 8, 2007 note of issue. CPLR 3212 (a) provides that a motion for summary judgment must be filed within 120 days of the note of issue unless “good cause” can be shown for the late filing. HD-WC’s motion is untimely, and it has failed to establish the requisite good cause for its delay. (See e.g. Brill v City of New York, 2 NY3d 648, 652-653 [2004].) As the Court of Appeals held in Brill and underscored in Miceli v State Farm Mut. Auto. Ins. Co. (3 NY3d 725, 726-727 [2004]), the court must deny an untimely summary judgment motion without considering it on the merits if the movant fails to comply with the statutory requirement that “good cause” be shown for the late filing. In both those cases, the Court reversed the lower court’s grant of summary judgment on the merits and denied the motions for procedural default.
HDWC argues that good cause exists for the late filing because additional discovery has been done since the note of issue was filed and that plaintiff “admits” more discovery needs to be done. The reference to taking of nonparty depositions post-note of issue, fails to specify dates or identify the witnesses and does *898 not establish any connection between the factual content of the depositions and the delay in bringing the summary judgment motion. Additionally, the motion is based primarily on the legal claims of statutory immunity under Social Services Law § 419 and common-law qualified immunity for discretionary acts of public officials, and the agency has not identified any relationship between those legal issues and the factual information yet to be discovered.
The only other basis cited by HDWC is an e-mail from plaintiff’s counsel dated September 20, 2007, purportedly indicating that further discovery will be necessary. The e-mail refers to a “recent NYC DOI report” and states only that “I may need limited post-note discovery based on matter[ ] there not previously available.” There is no connection made between this statement and the resulting further delay in seeking summary judgment. Indeed, plaintiff denies that discovery was sought after that date, and defendants argue that the NYC DOI report referred to in the e-mail, submitted by plaintiff as exhibit H in opposition to summary judgment, is irrelevant to this case. This tends to undercut HDWC’s position that “good cause” in the form of additional discovery caused the delay.
Nor is HDWC’s motion based on sufficient evidence. The only affidavit supporting the motion is that of an attorney without personal knowledge, and the EBT of plaintiff does not establish undisputed facts warranting summary judgment. CPLR 3212 (b) provides that a summary judgment motion “shall be supported by affidavit” of a person “having knowledge of the facts” as well as other admissible evidence. (See GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965, 967 [1985].) A conclusory affidavit or an affidavit by an individual without personal knowledge of the facts does not establish the proponent’s prima facie burden. (JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373, 384 [2005].)
The court, therefore, denies HDWC’s motion for summary judgment as untimely and without sufficient evidentiary support.
B. The City’s Motion
The City’s motion, although filed at the last minute (approximately the 117th day after the note of issue), is nevertheless timely. The motion, however, suffers from the same evidentiary weakness as the motion filed by HDWC; the only affidavit filed in support is that of an attorney without personal knowledge. (Id.) Nonetheless, the court will briefly discuss the motion *899 on the merits insofar as it is based on EBTs of not only plaintiff, but also two witnesses for the City.
To obtain summary judgment, a movant must establish its cause of action or defense sufficiently to warrant the court, as a matter of law, in directing judgment in its favor. (CPLR 3212 [b].) It must do so by tender of evidentiary proof in admissible form. (Zuckerman v City of New York, 49 NY2d 557, 562-563 [1980].) Once a movant has met the initial burden, the burden shifts to the party opposing the motion to establish, through admissible evidence, that judgment requires a trial of disputed material issues of fact. (Id. at 560; CPLR 3212 [b]; see also GTF Mktg. v Colonial Aluminum Sales, supra, 66 NY2d 965 [1985] [complaint properly dismissed on summary judgment where affidavit of opposing counsel was insufficient to rebut moving papers showing case has no merit].) The adequacy or sufficiency of the opposing party’s proof is not an issue until the moving party sustains its burden. (Bray v Rosas, 29 AD3d 422 [1st Dept 2006].) Moreover, the parties’ competing contentions must be viewed “in a light most favorable to the party opposing the motion.” (Lakeside Constr. v Depew & Schetter Agency, 154 AD2d 513, 514-515 [2d Dept 1989].)
The City has failed to establish its entitlement to statutory immunity under Social Services Law § 419 with respect to: (1) acts, omissions and decisions in returning custody of plaintiff and her older sister to their mother; and (2) acts, omissions and decisions in failing to maintain and execute the permanency goal of adoption for plaintiff and her sister. (See Sean M. v City of New York, 20 AD3d 146, 156 [1st Dept 2005] [claims that city failed to adequately supervise foster care not barred by section 419 as statute does not apply to failures to provide services required by Social Services Law].) Immunity pursuant to section 419 extends to all acts undertaken by persons providing child protective services under section 424, which covers the “[d]uties of the child protective service concerning reports of abuse or maltreatment.” The underlying policy for immunizing persons engaged in child protective services under section 424 is to encourage the reporting of child abuse situations, and thereby afford children greater protection. (See Van Emrik v Chemung County Dept, of Social Servs., 220 AD2d 952 [3d Dept 1995], Iv dismissed 88 NY2d 874 [1996].) The decision not to terminate parental rights and finalize the adoption of plaintiff and her sister, and instead to return them to their mother, had nothing to do with investigating child abuse reports or removing a child *900 from the parents. Accordingly, section 419 does not apply to these claims.
The First Department’s decision in Carossia v City of New York (39 AD3d 429 [1st Dept 2007]) does not require a different conclusion. In that case the agency had removed a child and filed a petition in Family Court against the parents concerning suspected sexual abuse. The parents sued for defamation and negligent infliction of emotional distress. The First Department concluded that the agency had immunity under Social Services Law § 419 because the acts of the officials involved the “removal or keeping” of a child. The Court (at 430) also found the agency had absolute immunity because the discretionary decisions of the agency personnel were of a “judicial or quasi-judicial nature,” in that they invoked the jurisdiction of the Family Court. That is an entirely different scenario. Here, suit has been brought on behalf of the abused child, not the parent, and the acts complained of involve the returning of a child to the abusive parent, apparently contrary to a Family Court order to terminate parental rights.
Section 419 does, however, apply to the City’s investigation of child abuse complaints against plaintiff’s mother. Regardless, there are issues of material fact regarding whether the City’s caseworkers committed gross negligence or willful misconduct in their handling or mishandling of plaintiffs case, which would override the claim of statutory immunity. (See Van Emrik v Chemung, 220 AD2d at 953.) Starting with the fact that one of the City’s caseworkers was disciplined for his failure to remove the children, the record submitted by the City, scanty as it is, paints the picture of an overburdened and disorganized agency that failed to protect plaintiff and her siblings. The court cannot decide as a matter of law, based on the record submitted by the movant, that the City’s failure did not result from gross negligence or willful misconduct.
The City also claims common-law immunity for the discretionary acts of its child welfare workers. Municipalities generally enjoy immunity from liability for discretionary activities they undertake through their agents. (See Lauer v City of New York, 95 NY2d 95, 100-101 [2000].) Where a public official undertakes a ministerial, as opposed to a discretionary act, there is no basis for claiming governmental, or common-law immunity. (Haddock v City of New York, 75 NY2d 478, 484 [1990] [explaining that a ministerial act is conduct requiring adherence to a governing rule, with a compulsory result].)
*901 The City has failed to establish, as a matter of law, based on undisputed material facts, that its welfare workers engaged in discretionary, as opposed to ministerial acts. The City’s witnesses testified at their EBTs to the existence of “high risk checklists” that a case manager would complete during a managerial review or supervisory conference of a case, to evaluate the risk to the child of returning to the family’s home, and to assess the family’s need for postdischarge support services. (Williams EBT at 12, City motion, exhibit C.) The City did not submit the checklists used in evaluating the risk to plaintiff. The City also failed to submit additional guidelines (described at the EBTs) addressing the duties of child welfare workers in investigating and following up on complaints of abuse and mistreatment by parents after a final discharge. These documents are particularly material in light of the EBT testimony of one of the City’s caseworkers that he was disciplined for his failure to remove plaintiff and her siblings from their mother’s custody after the City received complaints of abuse. (Thom EBT at 42-43, City motion, exhibit D.)
Accordingly, it is ordered that the motion for summary judgment of defendant Harlem Dowling-Westside Center for Children and Family Services is denied; and it is further ordered that the motion for summary judgment of defendants Administration for Children’s Services and City of New York is denied.