STEIN, J.:
The narrow issue before us on these appeals is whether defendants Long Island Power Authority (LIPA), Long Island Lighting Company (LILCO), and National Grid Electric Services, LLC (National Grid, and collectively with LIPA and LILCO, defendants) are entitled to dismissal of plaintiffs' amended complaints on the rationale that the actions challenged were governmental and discretionary as a matter of law, and, even assuming the actions were not discretionary, that plaintiffs' failure to allege a special duty is a fatal defect. Because defendants have not met their threshold burden of demonstrating that the action was governmental in the context of these pre-answer, pre-discovery CPLR 3211(a)(7) motions, we cannot say that the complaints fail to state causes of action as a matter of law. We therefore affirm.
I.
LIPA is a public authority that was created by the legislature in 1986 to provide a "safer, more efficient, reliable and economical supply of electric energy" in the service area of LILCO, which includes the Rockaway Peninsula in Queens County (see Public Authorities Law § 1020-a ). Due to rising costs of electricity and a lack of confidence in the ability of LILCO-an "investor owned utility" at the time-the legislature determined that "[s]uch matters of state concern best can be dealt with by replacing [LILCO] with a publicly owned power authority" (id. ). To effectuate these purposes, the legislature created *474 LIPA as a "corporate municipal instrumentality of the state ... which shall be a body corporate and politic and a political subdivision of the state, exercising essential governmental and public powers," and authorized it to operate in LILCO's service area ( Public Authorities Law § 1020-c [1 ], [2] ). ***725 At the direction of the legislature, LIPA acquired LILCO including, among other things, its electric transmission and distribution facilities (T & D System) (see Public Authorities Law § 1020-h [1 ][b]; Matter of Suffolk County v. Long Is. Power Auth., 258 A.D.2d 226, 228, 694 N.Y.S.2d 91 [2d Dept. 1999], lv denied 94 N.Y.2d 759, 705 N.Y.S.2d 6, 726 N.E.2d 483 [2000] ). The T & D System consists of the equipment necessary to bring power onto Long Island from high-load power lines, towers, and substations, and to deliver power to individual customers. As a result of the acquisition, LILCO became a wholly-owned subsidiary of LIPA, entitled by statute to "all the privileges [and] immunities ... of [LIPA]" ( Public Authorities Law § 1020-i[2] ). Meanwhile, in preparation for the acquisition, LIPA entered into a Management Services Agreement (MSA) with LILCO, which was eventually assigned to the entity now known as National Grid. The MSA governed all aspects of the relationship between LIPA and National Grid at the relevant time, including National Grid's main function of operating and maintaining the T & D System.
In each of the actions presently before us, plaintiffs allege that their real and personal property was destroyed by fire as a result of defendants' negligent failure to preemptively de-energize the Rockaway Peninsula prior to or after Hurricane Sandy made landfall in October 2012.[1] As alleged in plaintiffs' complaints, the Governor declared a state of emergency in all counties across New York State in preparation for the potential impact of the storm, and the National Hurricane Center warned of a "life-threatening storm surge" that could cause "repeated and extended periods of coastal and bayside flooding." Further, the Mayor of the City of New York issued Executive Order [Bloomberg] No. 163 ordering the evacuation of Zone A, which included the Rockaway Peninsula. Nevertheless, LIPA did not shut down power to the area, even though Consolidated Edison-the utility supplying most of the electricity to the five boroughs of New York City-preemptively did so in its service area in order to avoid salt water from the surge coming into contact with its electrical systems. According to plaintiffs, when the Rockaway Peninsula flooded due to storm surges from Hurricane Sandy, flood water came into contact with components of the T & D System, causing short circuits, fires and, ultimately, the destruction of plaintiffs' property.
***726 Plaintiffs also alleged in their amended complaints that LIPA persisted in failing to shut down power despite having received actual notice of downed, live power lines.
Defendants moved to dismiss the amended complaints pursuant to CPLR 3211(a)(7) insofar as asserted against them on the ground that LIPA was immune from liability based on the doctrine of governmental function immunity, and that LILCO and National Grid were entitled to the same defense. Specifically, LIPA argued, among other things, that the actions challenged were taken in the exercise of its governmental capacity and were discretionary, and, even if they were not discretionary, plaintiffs' failure to allege a special duty in the complaints amounted to a failure *475 to state viable claims. Plaintiffs opposed the motions on the ground that defendants' actions were proprietary, not governmental, and that special duty rules did not apply. Supreme Court denied the motions to dismiss in three substantially similar orders.
On defendants' appeals, the Appellate Division, Second Department, with one Justice dissenting, affirmed each order denying defendants' motions to dismiss ( 141 A.D.3d 555, 34 N.Y.S.3d 902 [2d Dept. 2016] ; 141 A.D.3d 554, 34 N.Y.S.3d 901 [2d Dept. 2016] ; 141 A.D.3d 561, 36 N.Y.S.3d 165 [2d Dept. 2016] ). The Court held that LIPA was not entitled to governmental immunity because the provision of electricity is properly categorized as a proprietary function and, in the Court's view, the functions of both providing electricity in the ordinary course and in responding to a hurricane are part of the proprietary core functions of electric utilities. The Court also rejected National Grid's claim of immunity on the basis that it presupposed that LIPA was entitled to governmental immunity. The dissenting Justice agreed that defendants were engaged in a generally proprietary activity as providers of electricity, but would have held that the specific acts or omissions alleged in the complaints were related, not to defendants' general operations but, instead, to the governmental function of preparing for, and responding to, a natural disaster ( 141 A.D.3d at 571-573, 36 N.Y.S.3d 165 [Miller, J., dissenting] ).
The Appellate Division granted defendants leave to appeal to this Court, in each case, certifying the question of whether its order was properly made.
II.
It is well settled that, "[d]espite the sovereign's own statutory surrender of common-law tort immunity for the misfeasance ***727 of its employees, governmental entities somewhat incongruously claim-and unquestionably continue to enjoy-a significant measure of immunity fashioned for their protection by the courts" ( Haddock v. City of New York, 75 N.Y.2d 478, 484, 554 N.Y.S.2d 439, 553 N.E.2d 987 [1990] ). The doctrine of governmental function immunity "reflects separation of powers principles and is intended to ensure that public servants are free to exercise their decision-making authority without interference from the courts" ( Valdez v. City of New York, 18 N.Y.3d 69, 76, 936 N.Y.S.2d 587, 960 N.E.2d 356 [2011] ). Additionally,
"this immunity reflects a value judgment that-despite injury to a member of the public-the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury" ( Haddock, 75 N.Y.2d at 484, 554 N.Y.S.2d 439, 553 N.E.2d 987).
Because the issue in this CPLR 3211(a)(7) motion is whether plaintiffs' complaints have stated a viable claim, the first issue that we must consider "is whether the ... entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" ( Applewhite v. Accuhealth, Inc., 21 N.Y.3d 420, 425, 972 N.Y.S.2d 169, 995 N.E.2d 131 [2013] ). This is so because, if the action challenged in the litigation is governmental, the existence of a special duty is an element of the plaintiff's negligence cause of action (see Lauer v. City of New York, 95 N.Y.2d 95, 711 N.Y.S.2d 112, 733 N.E.2d 184 [2000] ). As this Court recently explained:
"A government entity performs a purely proprietary role when its activities essentially *476 substitute for or supplement traditionally private enterprises. In contrast, a [government entity] will be deemed to have been engaged in a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers" ( Turturro v. City of New York, 28 N.Y.3d 469, 477-478, 45 N.Y.S.3d 874, 68 N.E.3d 693 [2016] [internal quotation marks and citations omitted]; see Sebastian v. State of New York, 93 N.Y.2d 790, 793, 698 N.Y.S.2d 601, 720 N.E.2d 878 [1999] ).
This Court has observed that "[a] governmental entity's conduct may fall along a continuum of responsibility to individuals and society deriving from its governmental and proprietary functions" ( ***728 Miller v. State of New York, 62 N.Y.2d 506, 511-512, 478 N.Y.S.2d 829, 467 N.E.2d 493 [1984] ), and that "the determination ... may present a close question for the courts to decide" ( Applewhite, 21 N.Y.3d at 425, 972 N.Y.S.2d 169, 995 N.E.2d 131 ). Consequently, "[w]hen the liability of a governmental entity is at issue, it is the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred which governs liability" ( Miller, 62 N.Y.2d at 513, 478 N.Y.S.2d 829, 467 N.E.2d 493 [internal quotation marks, brackets and citation omitted] ). Put differently, "the determination of the primary capacity under which a governmental agency was acting turns solely on the acts or omissions claimed to have caused the injury" ( Matter of World Trade Ctr. Bombing Litig., 17 N.Y.3d 428, 447, 933 N.Y.S.2d 164, 957 N.E.2d 733 [2011], cert denied sub nom Ruiz v. Port Auth. of N.Y. & N.J., 568 U.S. 817, 133 S.Ct. 133, 184 L.Ed.2d 28 [2012] ).
Assuming the government entity was acting in a governmental capacity, the plaintiff may nevertheless state a viable claim by alleging the existence of a special duty to the plaintiff (see Turturro, 28 N.Y.3d at 478, 45 N.Y.S.3d 874, 68 N.E.3d 693 ). If the plaintiff establishes the elements of the cause of action, including special duty, the government entity can avoid liability under the governmental function immunity defense by proving the challenged actions were discretionary in nature and that discretion was, in fact, exercised (see id.; Valdez, 18 N.Y.3d at 75-76, 936 N.Y.S.2d 587, 960 N.E.2d 356 ). However, because the governmental immunity defense protects government entities from liability only for discretionary actions taken during the performance of governmental functions, "[t]he ... defense has no applicability where the [entity] has acted in a proprietary capacity, even if the acts of the [entity] may be characterized as discretionary" ( Turturro, 28 N.Y.3d at 479, 45 N.Y.S.3d 874, 68 N.E.3d 693 ; see Matter of World Trade Ctr., 17 N.Y.3d at 432, 933 N.Y.S.2d 164, 957 N.E.2d 733 ).
III.
In assessing defendants' motions to dismiss under CPLR 3211(a)(7), we must accept plaintiffs' allegations as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether plaintiffs have a cause of action (see Leon v. Martinez, 84 N.Y.2d 83, 87-88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1994] ). At the same time, defendants bear the burden of establishing that the complaint fails to state a viable cause of action. Thus, the threshold inquiry distills to whether defendants have established that the challenged action, or failure to act, was governmental, as a matter of law, based solely on plaintiffs' amplified pleadings (see id. at 88, 614 N.Y.S.2d 972, 638 N.E.2d 511 ).
As noted above, plaintiffs averred that defendants were negligent in failing to *477 preemptively de-energize or otherwise ***729 suspend the provision of electricity to the Rockaway Peninsula. Specifically, plaintiffs alleged that defendants failed to take action despite repeated warnings that Hurricane Sandy would create a massive surge, inundating the locality with salt water that was likely to come into contact with components of defendants' T & D System, which defendants knew created a risk of fire and which, in fact, caused such fires. Plaintiffs further alleged that, notwithstanding defendants' actual knowledge of downed live electrical lines, they persisted in their failure to de-energize the area.
Viewing these allegations in the light most favorable to plaintiffs, as we must given the procedural posture, plaintiffs' allegations concern the provision of electrical power by defendants, a service that traditionally has been provided by private entities in the State of New York. In fact, LIPA itself was created to replace LILCO which, at the time, was an "investor owned utility" ( Public Authorities Law § 1020-a ). This takeover was anomalous and, when the legislation creating LIPA was enacted, the New York State Public Service Commission-the agency charged with ensuring safe and reliable utility service throughout the State-observed that, "[i]n New York State we have generally adopted a system of private ownership subject to close regulation" (NY St Dept of Pub Serv Mem at 1, Bill Jacket, L 1986, ch 517 at 21). In that vein, during a debate concerning the bill, the Senate acknowledged that passage of the bill marked an "extraordinary event in the history of New York State" (N.Y. Senate Debate on L 1986, ch 517 at 7060-7061). Moreover, the record demonstrates that LILCO itself observed that "[t]he draft bill breaks new ... ground on several scores[;] ... there is no precedent whatsoever for a utility takeover of this magnitude by any means anywhere in this country" (LILCO Mem, July 2, 1986 at 3).
Indeed, LIPA does not dispute that the provision of electricity traditionally has been a private enterprise which, in the normal course of operations, would be a proprietary function. However, LIPA argues that its alleged decision to refrain from shutting down electrical power to, or failure to de-energize, the Rockaway Peninsula-the specific act or omission alleged in the amended complaints-was a governmental function under the circumstances here because it related more broadly to the protection of the public from a natural disaster.
Given the procedural posture, we cannot say, as a matter of law based only on the allegations in the amended complaints, ***730 as amplified, that LIPA was acting in a governmental, rather than a proprietary, capacity when engaged in the conduct claimed to have caused plaintiffs' injuries. We reject defendants' claim that the magnitude of the disaster, without any reference to the circumstances and nature of the specific act or omission alleged-i.e., the failure to de-energize-renders LIPA's conduct governmental as a matter of law.[2] *478 Inasmuch as defendants have failed to meet their burden to establish that plaintiffs' amended complaints failed to state viable claims, we hold that the courts below properly denied LIPA's motions to dismiss.[3]
Accordingly, in each appeal, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

LILCO was not named as a defendant in one of the actions (see Heeran v. Long Is. Power Auth. (LIPA), 141 A.D.3d 561, 36 N.Y.S.3d 165 [2d Dept. 2016] ).

Indeed, in cases in which it is difficult to determine whether the municipal entity has acted in a proprietary or governmental capacity, that inquiry has not been resolved at the threshold stage of the litigation based on the plaintiffs' allegations alone. Rather, such determinations have been made after discovery on summary judgment or after trial (see e.g. Matter of World Trade Ctr., 17 N.Y.3d at 448, 933 N.Y.S.2d 164, 957 N.E.2d 733 [reasoning that the acts or omissions for which plaintiffs sought to hold the defendant liable involved the "strategic allocation of police resources" and reflected a "considered legislative-executive decision as to how those resources may be deployed"] ). Nevertheless, while we conclude that, in this particular case, the procedural posture in which it is presented to us does not enable us to determine the nature of LIPA's acts, we note that we have recognized circumstances in which that determination could be made in the context of a CPLR 3211(a)(7) motion (see e.g. Lauer v. City of New York, 95 N.Y.2d 95, 102-103, 711 N.Y.S.2d 112, 733 N.E.2d 184 [2000] ). We do not foreclose the possibility that this threshold issue concerning the governmental function immunity defense may be capable of resolution at the pre-answer, motion to dismiss stage in other appropriate cases.

LILCO, as LIPA's subsidiary, likewise was not entitled to dismissal of the amended complaints. Further, inasmuch as defendants' assertion that National Grid should be afforded governmental immunity by virtue of its contractual obligation to operate LIPA's T & D System presupposes that LIPA, itself, is entitled to immunity, defendants have not shown that plaintiffs' amended complaints should be dismissed insofar as asserted against National Grid.