THOBURN M. STAMM, III, et al., Respondents, v PHH VEHICLE MANAGEMENT SERVICES, LLC, Doing Business as PHH ARVAL, et al., Appellants, et al., Defendant. [822 NYS2d 240]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered on or about September 23, 2005, which denied defendants' motions for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the

motion and cross motion granted and the complaint dismissed with prejudice. The Clerk is directed to enter judgment accordingly.

On June 30, 1985, defendant Thoburn M. Stamm, Jr. was driving his family through Osceola County, Michigan with his wife Marilyn and their two children, plaintiffs Thoburn, III (Toby) and Cannon, who were, at the time, 4 years and 16 months old, respectively. Marilyn sustained serious and permanently disabling brain injuries when the Stamm car was struck by a car driven by Dorothy Millbrook, a Michigan resident, and leased from We Try Harder, Inc. (WTH), a wholly owned subsidiary of Avis Leasing Corporation.* In 1986, Marilyn and Thoburn sued WTH, as well as the manufacturer of the Millbrook car, in New York State Supreme Court, Bronx County, for Marilyn's catastrophic injuries and for Thoburn's loss of consortium; that action was ultimately settled for $6.5 million.

After an unsuccessful attempt to recover monetary damages for loss of parental consortium and physical and emotional injuries against PHH Corp. (*Sheldon v PHH Corp.*, 135 F3d 848 [1998]), plaintiffs, no longer infants, initiated the instant action, again for physical and emotional injuries sustained in the subject accident, against their father and PHH Vehicle Management Services, LLC, the successor-in-interest to WTH.

In their complaint, plaintiffs allege, inter alia, physical and emotional injuries suffered as a "result of seeing [their] mother being severely and seriously injured while [they] were in the zone of danger." However, it is clear from plaintiffs' bill of particulars that they suffered no significant physical injuries, and that their claims are for the emotional distress, posttraumatic stress syndrome, shock and fright caused by the accident and, as to Toby, an additional claim for generalized anxiety disorder.

In contrast to their mother, who was rendered unconscious, sustained significant blows to her head, face and arms and ended up lying over the console between the driver's seat and the front passenger seat, plaintiffs remained in their respective child restraining seats in the back of the car. Toby suffered only a few glass shards that punctured the skin on his forehead and Cannon sustained an abrasion to his forehead that was treated with disinfectant. Within two minutes of the accident, plaintiffs were removed from the car and placed on the grass some 30 to

---

* All three of the occupants in the Millbrook vehicle were killed as a result of the accident.

40 feet away from the car while it took rescue workers more than 20 minutes to extricate Marilyn, who was then transported by ambulance to an area hospital. Thoburn and plaintiffs were taken in another ambulance but were soon discharged and sent to stay with family members.

Marilyn survived the accident, and she and Thoburn are still married, but she occupies a separate unit in the same apartment building as Thoburn because she requires round-the-clock nursing care. As for plaintiffs, between the time of the accident and their attaining adulthood, they lived in Garrison, New York, City Island in the Bronx, and Stuyvesant Town in Manhattan, cared for primarily by Thoburn and a series of nannies.

Defendants moved for summary judgment dismissing the complaint, contending that while plaintiffs likely suffered lasting emotional injuries as a result of growing up with a permanently disabled mother, being raised by a series of different nannies in various residences and having a troubled relationship with their father and other caregivers, the record is devoid of evidence that any such emotional injuries were the result of having observed the occurrence of their mother's serious physical injury in the zone of danger. Plaintiffs opposed, submitting an affidavit of a social worker who treated Toby from elementary school through high school, but who last saw him six years earlier and an unsworn medical note regarding Cannon.

In denying defendants' motions to dismiss the complaint and all cross claims, the motion court found that the competing expert opinions concerning plaintiffs' emotional and/or psychological injuries raised a triable issue of fact regarding the zone-of-danger-based claims of negligent infliction of emotional distress. This was error.

In order to recover for an alleged emotional injury based on the zone of danger theory of liability, a plaintiff must establish that he suffered serious emotional distress that was proximately caused by the observation of a family member's death or serious injury while in the zone of danger (*Bovsun v Sanperi*, 61 NY2d 219 [1984]; *DeCintio v Lawrence Hosp.*, 299 AD2d 165, 166 [2002], *lv denied in part and dismissed in part* 100 NY2d 549 [2003]). The emotional injury must be not only serious and verifiable but also "tied, as a matter of proximate causation, to the observation of the serious injury or death of the family member and such injury or death must have been caused by the conduct of the defendant" (*Bovsun*, 61 NY2d at 231-232).

Defendants' expert, board-certified psychiatrist, Dr. Mark Rubinstein, reviewed the party deposition transcripts, the vari-

ous school, hospital and medical records, and personally examined the children. As to Toby, he found that although he possessed some independent recollection of the accident, he did not see his mother in a seriously injured condition but merely recalled "something big" happening, and that Toby's recollection of the event was vague, childlike, fragmented and nonlinear. As for his present condition, Toby was found to be fully appropriate for a young man of his age and without any of the symptoms indicative of a psychiatric disorder or injury derived from having witnessed one's mother sustain serious injury in an accident. Instead, Dr. Rubinstein concluded that Toby's various psychodynamic issues were attributable to growing up with a disabled mother and his troubled relationship with his father and some of the many nannies he had over the years.

Plaintiffs' social worker's opposing affidavit stated that Toby, who was four years old at the time of the accident, had at least some level of cognitive awareness that an accident had occurred and resulted in injury to his mother, and that his psychological/emotional problems were substantially caused by his being involved in that accident. Such fails to raise an issue of fact as to either the seriousness of the alleged problems or Toby's contemporaneous observation of his mother in an injured state (*see Bissonette v Compo*, 307 AD2d 673 [2003]). Accordingly, the zone of danger claim as to Toby should have been dismissed.

The claim of Cannon, who was 16 months old at the time of the accident and has no independent recollection of the accident, is even more tenuous. Plaintiffs' sole proof of Cannon's emotional injury consists of a note from psychiatrist Dr. Arthur Zelman. However, as the note is unsworn and undated, it does not constitute evidence in admissible form (*Banco Popular N. Am. v Victory Taxi Mgt.*, 1 NY3d 381, 384 [2004]). Thus, plaintiffs failed to come forward with sufficient evidence to counter defendants' prima facie showing that Cannon's affect, although remote and muted, was in no way related to having witnessed his mother sustain a serious injury. Concur—Tom, J.P., Mazzarelli, Friedman, Marlow and Malone, JJ.