[921 NE2d 585, 893 NYS2d 818]

ZELINDA ANTOINETTE DINARDO, Respondent, v CITY OF NEW YORK, Defendant, and BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

Argued October 15, 2009; decided December 1, 2009

**APPEARANCES OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Marta Ross* and *Edward F.X. Hart* of counsel), for appellant.

*Clark, Gagliardi & Miller, P.C.*, White Plains (*Henry G. Miller* and *John S. Rand* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

The order of the Appellate Division should be reversed, with costs, and the complaint dismissed.

Plaintiff Zelinda Dinardo, a special education teacher at a New York City public school, was injured when she tried to restrain one student from attacking another. The student had been verbally and physically aggressive for several months, and plaintiff had repeatedly expressed concerns to her supervisors about her safety in the classroom. The school's supervisor of special education and the principal had both told her that "things were being worked on, things were happening" and urged her to "hang in there because something was being done" to have the student removed. Following her injury, plaintiff commenced this action alleging, among other things, that by these assurances the Board of Education of the City of New York had assumed an affirmative duty to take action with respect to the removal of the student and that she justifiably relied upon those assurances. When the student was not removed in a timely fashion, plaintiff alleges, the altercation which led to her injury resulted.

At trial, at the close of plaintiff's proof, the Board of Education moved for judgment as a matter of law pursuant to CPLR 4401. Following a jury verdict in Dinardo's favor, the Board of Education moved to set aside the verdict under CPLR 4404 (a).

Supreme Court denied both motions. The Appellate Division affirmed the trial court's judgment awarding Dinardo damages. Two Justices dissented on a question of law, and the Board of Education appeals as of right under CPLR 5601 (a).

The Board of Education now argues that the conduct alleged to have constituted a promise to act on her behalf was discretionary government action, which cannot be a basis for liability (*see McLean v City of New York*, 12 NY3d 194, 202-203 [2009]; *Tango v Tulevech*, 61 NY2d 34, 40-41 [1983]). We have no occasion to decide that question because, even assuming the school officials' actions in this case were ministerial, there is no rational process by which a jury could have found liability.

In negligence cases premised on a special relationship between municipality and plaintiff,

> "the injured party's reliance is as critical . . . as is the municipality's voluntary affirmative undertaking of a duty to act. . . . Indeed, at the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced [her] either to relax [her] own vigilance or to forego other available avenues of protection" (*Cuffy v City of New York*, 69 NY2d 255, 261 [1987]).

The assurance by the municipal defendant must be definite enough to generate justifiable reliance by the plaintiff.

Affording Dinardo every inference that may properly be drawn from the evidence presented and considering the evidence in a light most favorable to her (*see Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]), we conclude that there is no rational process by which the jury could have reached a finding that plaintiff justifiably relied on assurances by the Board of Education. The vaguely worded statements by Dinardo's supervisor and principal that "something" was being done to have the student removed, without any indication of when, or if, such relief would come, do not, as a matter of law, constitute an action that would lull a plaintiff into a false sense of security or otherwise generate justifiable reliance. Indeed, plaintiff was aware that the administrative process for determining whether a student should transfer to a different program or school could take up to 60 days and was still ongoing when the incident occurred. There was therefore no "special relationship" between

the Board of Education and plaintiff (*see Cuffy,* 69 NY2d at 259), upon which a cause of action for negligence could be based, and the Board of Education is entitled to judgment as a matter of law.

Chief Judge LIPPMAN. (concurring). I disagree with the majority's conclusion that a rational jury could not have found that a special relationship existed between plaintiff and defendant Board. For several months prior to the incident giving rise to this action, the student exhibited increasing behavioral problems, including bringing a knife to school, which resulted in a week's suspension. Concerned about the student's behavior and the classroom safety risks it presented, plaintiff and her supervisor submitted to the Board's Committee on Special Education a written recommendation to remove the student from plaintiff's classroom and place him in a learning environment better equipped to his highly problematic conduct. The recommendation was supported by notes that plaintiff had kept regarding the student's behavior. These notes disclose that the subject student frequently punched, kicked and threw various items at his classmates. He also threatened to kill plaintiff, another teacher, and his fellow classmates on numerous occasions.

While the transfer request was pending, plaintiff repeatedly told her supervisors that she was concerned about the safety of her classroom and "didn't know how much longer [she could] hang in there." She testified, "it was getting more and more impossible to conduct the class . . . I wanted to quit. I couldn't go on anymore . . . It was getting unsafe, and I was concerned about safety in the classroom, and . . . I did not want to return." In response, her supervisors told her to "hang in there" because "something was being done" and "things were happening."

Viewing the evidence, as we must at this juncture, in the light most favorable to plaintiff (*see Szczerbiak v Pilat,* 90 NY2d 553, 556 [1997]), I think the jury could have rationally concluded that a special relationship existed between the plaintiff and defendant Board. Although the transfer request was still outstanding when plaintiff was injured, the supervisors' repeated assurances that "things were happening" and "something was being done" suggested an impending solution to the dangerous situation. It would not be unreasonable for the jury to infer that plaintiff, in justifiable reliance on these assurances, chose to remain in the classroom and continue teaching rather than quitting as she had threatened. It should be stressed that the

stark choice facing plaintiff was whether she should resign and abandon her class or continue to teach in a situation which was by any reasonable measure dangerous. In electing to follow the latter, socially desirable course, plaintiff relied upon the municipality's assurances that the situation would soon be rectified. Indeed, the evidence, properly viewed, practically compels the conclusion that the assurances made to plaintiff induced her to "relax [her] own vigilance or . . . forego other available avenues of protection" (*Cuffy v City of New York*, 69 NY2d 255, 261 [1987]), and thus sufficed to establish the special relationship upon which recovery is conditioned.

Nevertheless, I concur in the majority's result on constraint of *McLean v City of New York* (12 NY3d 194 [2009]). In *McLean*, this Court held that government action, if discretionary, may never form the basis for tort liability, even if a special relationship exists between the plaintiff and the municipality. According to *McLean*, the special relationship exception only applies where the challenged municipal action is ministerial (*see id.* at 203). In reaching this conclusion, the Court relied on *Tango v Tulevech* (61 NY2d 34, 40 [1983]) and *Lauer v City of New York* (95 NY2d 95, 99-100 [2000]). But, in those cases, the Court never expressly considered whether the special relationship exception applied to discretionary governmental acts. Even if *Tango* and *Lauer* can arguably be read to imply that the special relationship exception does not apply to discretionary acts, that interpretation was flatly rejected in *Pelaez v Seide* (2 NY3d 186 [2004]), decided after *Tango* and *Lauer*, but prior to *McLean*. In *Pelaez*, this Court explicitly held that a "narrow exception" to the general discretionary immunity rule exists when a plaintiff establishes a special relationship with the municipality (2 NY3d at 193). One year later, in *Kovit v Estate of Hallums*, we recognized that the police officer was exercising his discretion and that in order "[t]o hold the City liable for the negligent performance of a discretionary act, a plaintiff must establish a special relationship with the municipality" (4 NY3d 499, 506 [2005]). I can discern no convincing rationale for the Court's disregard of this relevant binding precedent, which so unreasonably narrows—indeed effectively eliminates—the special relationship exception.

Although I agree that liability should not generally attach when a municipal employee is exercising his or her reasoned judgment, the broad immunity recognized for discretionary acts should not extend to situations where a special relationship is

present. The touchstone of the special duty rule is that the government, by its undertaking to the specific plaintiff, has gone above and beyond the general duty it owes to the public and created a unique relationship with that plaintiff, upon which he or she is entitled to rely. This is entirely consistent with the general tort principle that a defendant should be held liable for the breach of a duty it voluntarily assumed (*see Moch Co. v Rensselaer Water Co.*, 247 NY 160, 167 [1928]).

Whether the municipality's act is characterized as ministerial or discretionary should not be, and never has been, determinative in special duty cases. Indeed, in *Cuffy*, a seminal case in the special duty context, the plaintiffs alleged that the police had a special duty to protect them based on a police officer's promise that an arrest would be made or some other protective action would be taken regarding an ongoing dispute between plaintiffs and their neighbors (69 NY2d at 259). Although noting that the provision of police protection is within the reasoned judgment of officials and therefore necessarily discretionary in nature, we recognized that an exception to the discretionary immunity rule exists when a special relationship exists between the municipality and plaintiff (*see id.* at 260; *see also Kircher v City of Jamestown*, 74 NY2d 251, 255-256 [1989]; *De Long v County of Erie*, 60 NY2d 296, 305 [1983]). Unfortunately, under the rule announced in *McLean*, a plaintiff will never be able to recover for the failure to provide adequate police protection, even when the police voluntarily and affirmatively promised to act on that specific plaintiff's behalf and he or she justifiably relied on that promise to his or her detriment. This is particularly disturbing given our recognition that the "police cases . . . all but occupy the special relationship field" (*Pelaez*, 2 NY3d at 205).

The rule in *McLean*, which clearly extends beyond police protection and applies to all discretionary governmental actions, allows public officials to unjustifiably hide behind the shield of discretionary immunity even when their actions have induced a plaintiff to change his or her behavior in the face of a known threat. Because almost any governmental act may be characterized as discretionary (*see Tango*, 61 NY2d at 41, citing Prosser, Torts § 132, at 990 [4th ed]), *McLean* too broadly insulates government agencies from being held accountable to injured parties.

The determination here as to whether and when to transfer a potentially dangerous student is undoubtedly within the discretion of the Board and thus may not subject the Board to

liability given the recent holding in *McLean*. Accordingly, I reluctantly concur with the majority that the order of the Appellate Division should be reversed and the complaint dismissed.

Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur in memorandum; Chief Judge LIPPMAN concurs in result in an opinion; Judge CIPARICK concurs in result, stating: The majority does not decide whether this is ministerial or discretionary. I think it was discretionary and therefore, under our recent decision in *McLean v City of New York* (12 NY3d 194 [2009]), must concur, but if I were to go to the issue of special relationship, as the majority does, I would disagree for the reasons stated in the concurrence of the Chief Judge.

Order reversed, etc.