[901 NYS2d 166]

CARMEN VALDEZ, Individually and as Mother and Natural Guardian of CEASAR MARTI and Another, Respondent, v CITY OF NEW YORK et al., Appellants.

First Department, April 29, 2010

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Mordecai Newman, Larry A. Sonnenshein* and *Lavanya Pisupati* of counsel), for appellants.

*Sivin & Miller, LLP*, New York City (*Edward Sivin* of counsel), for respondents.

## OPINION OF THE COURT

CATTERSON, J.

In this action, plaintiff Carmen Valdez is seeking damages for injuries she sustained after her former boyfriend shot and seriously wounded her outside her apartment. The shooting followed a telephone call in which the boyfriend, Felix Perez, threatened to kill the plaintiff. It is undisputed that the assault occurred approximately 24 hours after a police officer, who knew that the plaintiff had an order of protection against Perez, told her that the police would arrest him immediately.

The plaintiff asserts a "special relationship" exception to the general rule that a municipality cannot be held liable for injuries resulting from the failure to provide adequate police protection. (*See Cuffy v City of New York*, 69 NY2d 255, 260 [1987].) We examine her claim in the light of the most recent Court of Appeals rulings, specifically focusing on the element of justifiable reliance, an element we find lacking in this case.

As a threshold matter, we reject the notion that *McLean v City of New York* (12 NY3d 194 [2009]) and the Court's follow-up decision in *Dinardo v City of New York* (13 NY3d 872 [2009]) constrain our decision in this case. We recognize that in *McLean*, the Court held that a special duty exception to governmental immunity applies only to ministerial actions, and not discretionary ones; and further, in *Dinardo*, Chief Judge Lippman, in concurrence, observed that since provision of police protection

is necessarily discretionary in nature, then under the rule announced in *McLean*, the special duty exception is essentially eliminated, and a plaintiff will never be able to recover for a failure to provide adequate police protection. (*Dinardo*, 13 NY3d at 876.)

However, we find the resolution lies in accepting that the Court did not intend to eliminate the special duty exception, but rather specifically recognized that its precedent established a subset of police action or nonaction that can provide a basis for liability. Indeed, the focus by the *McLean* Court on the decision in *Cuffy* (69 NY2d 255 [1987]) appears to reinforce the well established rule that a governmental agency's liability for negligent performance depends in the first instance on whether a special relationship existed with the injured person. The Court specifically lists the special duty exception established in *Cuffy* as one of the three ways a special relationship can form and thus sustain liability against a municipality. The Court highlights the four elements that establish such a special duty exception, and then finds that such elements were not present in the *McLean* case. (*McLean*, 12 NY3d at 201.)

It is inconceivable then, that the Court intended to eliminate the special duty exception upon which liability in police cases can be found without explicitly reversing the position it appears to solidly reiterate by citing *Cuffy* at length in the decision. On the contrary, both *McLean* and *Dinardo* support the position that the starting point of any analysis as to governmental liability is whether a special relationship existed, and not whether the governmental action is ministerial or discretionary. (*See McLean*, 12 NY3d at 203 ["In (*Pelaez v Seide* [2 NY3d 186 (2004)] and *Kovit v Estate of Hallums* [4 NY3d 499 (2005)]) we found no special relationship or special duty. Thus there could be no liability, whether the actions at issue were characterized as ministerial or discretionary"]; *see also Dinardo*, 13 NY3d at 874 [the Court had no occasion to decide that question of whether action is discretionary or ministerial since there was no rational process by which a jury could have reached a finding that plaintiff justifiably relied on assurances].)

In this case, therefore, we do not need to reach the issue of whether the action was discretionary or ministerial since the plaintiff ultimately fails to establish the element of justifiable reliance for a special duty exception. In asserting a special relationship exception to the general rule that a municipality cannot be held liable for injuries resulting from the failure to

provide adequate police protection, the plaintiff has the burden of establishing such a relationship by showing (1) that the municipality assumed an affirmative duty, through promises or actions, to act on behalf of the injured party; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) the party's justifiable reliance on the municipality's undertaking. (*Cuffy*, 69 NY2d at 260.)

In this case, the first three elements are not at issue. However, the defendants assert that the trial court erred in its finding that the plaintiff established justifiable reliance on the City's undertaking. For the reasons set forth below, we agree with the defendants, and reverse the trial court.

Specifically, *Cuffy* and its progeny stand for the proposition that the justifiable reliance element cannot be satisfied by evidence of a plaintiff's belief in, or expectation of adequate police protection. (*See also Badillo v City of New York*, 35 AD3d 307, 308 [1st Dept 2006] [decedents' alleged reasonable expectation that help was on the way after 911 cell phone call not enough to establish justifiable reliance], citing *Grieshaber v City of Albany*, 279 AD2d 232, 235-236 [3d Dept 2001], *lv denied* 96 NY2d 719 [2001]; *Clark v Town of Ticonderoga*, 291 AD2d 597 [3d Dept 2002], *lv denied* 98 NY2d 604 [2002] [reliance element cannot be satisfied by evidence of plaintiff's hope or even belief]; *see also Finch v County of Saratoga*, 305 AD2d 771, 773 [3d Dept 2003].)

Unfortunately for her case, the plaintiff does not argue more. In her appellate brief, the plaintiff reiterates her testimony to assert that "when she opened her apartment door she *believed* [the police] had acted on [their] promise . . . to arrest Perez immediately" (emphasis added). Nor does her actual testimony indicate that her reliance was based on anything more than mere belief.

The plaintiff, who renewed an order of protection against Perez, testified that on July 19, 1996, Perez called her and threatened to kill her. She decided to leave her apartment but, on her way to her grandmother's house, she called the police precinct. Officer Torres told her: "[D]on't worry, don't worry, we're going to arrest him. Go to your home and don't worry anymore."

The plaintiff then returned to her apartment with her children. The plaintiff explained that she thought the arrest was

going to be "immediately" because Torres "told me to go back immediately to my house."

The plaintiff further testified that she was expecting Torres to call her to tell her about Perez's arrest because the police had called her on a prior occasion to confirm they had served the order of protection on him. She testified that she remained in her apartment with her sons until about 24 hours after the telephone conversation with Officer Torres. She then left her apartment to take out the garbage. At that time, Perez accosted her in the hallway and repeatedly shot her.

The plaintiff conceded that at the time she stepped out of her apartment on July 20, 1996, she had not received a call from Torres, or any other police officer. Nor did she call the police precinct at any time to ascertain that Perez had been arrested.

The defendants correctly assert that the instant case is factually indistinguishable from *Cuffy*. In that case, the Court of Appeals determined that a verbal assurance, without more, did not constitute a sufficient basis for the plaintiff's justifiable reliance. (*Cuffy*, 69 NY2d at 263.) There, the plaintiff sought police protection for himself and his family because of a tenant's abusive conduct. He told the police that, unless he was given police protection, he was going to leave his apartment. The police told the plaintiff that he should not worry and that the police would do something about the situation "first thing in the morning." (*Id*. at 259.) The police did not act on the promise and the plaintiff's wife and son suffered injuries in an altercation with the tenant on the following evening.

The Court determined that the plaintiff's reliance on the police officer's promise was not justified because by midday the family had not seen any police activity outside their home, and the plaintiff was aware that the police had done nothing to restrain the tenant. In other words, whatever reliance Cuffy may have legitimately placed on the police officer's promise was not valid once it was no longer "first thing in the morning." Similarly, in this case, even if some justifiable reliance could be found on the plaintiff's behalf, it was certainly no longer valid by the end of the first day when the plaintiff had not received the expected phone call about Perez's "immediate" arrest.

In the few cases where courts have found justifiable reliance, and thus a special relationship exception, a verbal assurance invariably has been followed by visible police protection of the plaintiff. (*See Mastroianni v County of Suffolk*, 91 NY2d 198 [1997] [police patrol car was initially dispatched and stationed

outside plaintiff's house]; *Zibbon v Town of Cheektowaga*, 51 AD2d 448, 452 [4th Dept 1976], *appeal dismissed* 39 NY2d 1056 [1976] [victim told relatives prior to shooting: "there are police cars all over the place"].) Conversely, where the undertaking is based on a verbal assurance of protection but there is no visible police action thereafter, courts have followed *Cuffy*, and found that no special relationship exists. (*See Finch v County of Saratoga*, 305 AD2d at 772 [plaintiff told by police: "deputy would be there within the hour"]; *Clark v Town of Ticonderoga*, 291 AD2d at 598 [plaintiff told by police: "we will keep an eye on you"]; *Litchauer v Town of Yorktown*, 134 AD2d 575 [2d Dept 1987] [no evidence of any police conduct].)

In this case, there was no visible police conduct or action of any type after Torres assured the plaintiff that he was going to arrest Perez. There was no police patrol or police officer dispatched (or even promised) to the plaintiff for her protection pending the arrest. The plaintiff did not witness the police taking Perez into custody; nor was she informed by the police— either by telephone or in person—that Perez had been arrested. By process of elimination, therefore, the plaintiff's reliance was not based on anything other than belief or expectation.

It is also significant that, even though the plaintiff testified that she understood "immediately" to mean "right away," nevertheless her testimony does not support the inference that the use of the adverb was anything more than hyperbole. The plaintiff acknowledged in her testimony that she did not call the police on the evening of July 19th to check on Perez's arrest "because I thought [Torres] would be out there in the street looking for Felix."

Hence, by the plaintiff's own admission, any reliance at that point would not have been justified since she understood the police needed time to locate Perez in order to arrest him. The plaintiff, nevertheless, urges this Court to accept the proposition that the simple passage of time deemed her reliance justified. In other words, her reliance was justified 24 hours later because, solely in her estimation, by the time she stepped out of her apartment the police had sufficient time to locate and arrest Perez. Such assertion places plaintiff's proposition directly in conflict with the holding of *Cuffy* where passage of time without any evidence of the promised police action rendered the plaintiff's reliance unjustified.

In any event, not only did the plaintiff fail to establish that she justifiably relied on Torres' assurance, she failed to demon-

strate that she relied on it at all. The plaintiff failed to meet her burden of showing that the assurance "lulled [her] into a false sense of security, and . . . thereby induced [her] either to relax [her] own vigilance or to forego other available avenues of protection." (*Cuffy*, 69 NY2d at 261.) On the contrary, her testimony indicated that she spent the entire 24-hour period (during a weekend) with her sons inside her apartment leaving only to take out the garbage—something she was obliged to do on a daily basis because of a problem with rats. Moreover, she did not offer any testimony or evidence that her grandmother's house would have provided any better protection against Perez once she decided to step outside it and into a public area.

We are not persuaded by our dissenting colleague's reliance on *Sorichetti v City of New York* (65 NY2d 461 [1985]), a case he describes as involving "less compelling" circumstances than the instant case. In *Sorichetti*, the salient facts involved a "distraught and helpless" mother, a violent abusive husband against whom she had an order of protection, and a child who had visitation with the husband on the day that the mother pleaded with police to arrest her husband after he made threats against her. The police, knowing about the order of protection as well as the history of violence between the couple, refused to respond immediately but told the plaintiff that they would "send a radio car out" if the father "didn't drop [the child] off in a reasonable time" (65 NY2d at 466). The mother eventually left the police precinct. The police did not send a car at all, but the father's sister entered his apartment later that evening and found the child with injuries severe enough to leave her permanently disabled. (65 NY2d at 467.)

. *Sorichetti* should not be used as precedent for any analysis of an injured party's justifiable reliance. First, *Sorichetti* was decided in 1985, two years before the Court fully formulated or enunciated precisely what it meant by justifiable reliance in *Cuffy*. Moreover, even though in *Cuffy*, the Court cited to *Sorichetti* for the element of justifiable reliance, the phrase was never used in that case. (*See Sorichetti*, 65 NY2d at 469.) More puzzling still is the Court's finding of special duty in the absence of any factors that would establish reliance in *Sorichetti*, much less justifiable reliance.

As the Court explained in *Cuffy*, the rationale for including reliance as an element of special duty is that "the injured party's reliance is as critical in establishing the existence of a 'special relationship' as is the municipality's voluntary affirmative

undertaking of a duty to act." (*Cuffy*, 69 NY2d at 261.) This is because of "the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection." (*Id.*) The Court found such reliance in *De Long v County of Erie* (60 NY2d 296 [1983]), where the victim called 911 and police officers went to the wrong address. In that case, because the victim was not yet at the mercy of the intruder, the Court found that it could not be said "that th[e] assurance [that the police were on their way] played no part in her decision to remain in her home." (*Id.* at 305.) Hence, the Court found that there was a special duty.

In *Sorichetti*, the Court did not attempt any such similar analysis. The Court did not look at other avenues of protection the mother could have taken. On the contrary, the Court simply observed that "in her helpless and distraught state [the mother] *had no alternative* but to seek the assistance of the police." (65 NY2d at 471 [emphasis added].) Hence, it would appear that the Court found a special duty *in spite of* the fact that the police assurance had nothing to do with lulling her into a false sense of security or influencing her choice of other avenues of protection.

Accordingly, the judgment of the Supreme Court, Bronx County (Lucy Billings, J., and a jury), entered September 18, 2008, insofar as appealed from, awarding plaintiff damages for past and future pain and suffering, and awarding plaintiff's two infant children damages for past pain and suffering, and bringing up for review an order, same court and Justice, entered March 14, 2008, which denied defendants' motion to set aside the verdict, reversed, on the law, the verdict vacated and the complaint dismissed. Appeal from the aforesaid order should be dismissed as subsumed in the appeal from the judgment.

ABDUS-SALAAM, J. (concurring). I concur with the conclusion that plaintiff has failed to establish the element of justifiable reliance necessary for the special duty exception.

Notably, in *McLean v City of New York* (12 NY3d 194 [2009]), the Court of Appeals pronounced, notwithstanding indications to the contrary in earlier decisions (*see Kovit v Estate of Hallums*, 4 NY3d 499 [2005]; *Pelaez v Seide*, 2 NY3d 186 [2004]; *Cuffy v City of New York*, 69 NY2d 255 [1987]), that "[g]overnment action, if discretionary, may not be a basis for liability,

while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general" (12 NY3d at 203). In *Dinardo v City of New York* (13 NY3d 872 [2009]), Chief Judge Lippman noted his disagreement with the *McLean* analysis, which limits liability in special duty cases to ministerial acts, and observed that because the provision of police protection is a discretionary act,

> "under the rule announced in *McLean*, a plaintiff will never be able to recover for the failure to provide adequate police protection, even when the police voluntarily and affirmatively promised to act on that specific plaintiff's behalf and he or she justifiably relied on that promise to his or her detriment" (*id*. at 877 [Lippman, Ch. J., concurring].)

Under *McLean*, had plaintiff proven justifiable reliance, there could still be no liability in this case unless the failure of the police to take any action to arrest Perez was the failure to perform a ministerial act. Here, even were we to conclude that the arrest of an individual who has violated a protective order is ministerial—an act that "envisions direct adherence to a governing rule or standard with a compulsory result" (*Tango v Tulevech*, 61 NY2d 34, 41 [1983])—and not discretionary—"the exercise of reasoned judgment which could typically produce different acceptable results" (*id.*)—the judgment must be reversed because the justifiable reliance element of the special relationship exception has not been established.

DeGrasse, J. (dissenting in part). Plaintiff's former live-in boyfriend, Felix Perez, shot and seriously wounded her before fatally shooting himself. These acts were committed in the immediate presence of plaintiff's then five-year-old twin sons. Plaintiff had been subjected to Perez's ongoing threats and harassment. Accordingly, at plaintiff's instance, a police officer served Perez with an order of protection nine days before the incident. Perez continued to call and harass plaintiff nevertheless. Plaintiff testified that she reported these calls to Police Officer Torres of the 48th Precinct's Domestic Violence Unit. One day before the shooting, Perez called plaintiff again, this time threatening to kill her. Frightened, plaintiff left her apartment with her sons and headed for her grandmother's home. While en route, plaintiff called Torres and told him about Perez's death threat. Plaintiff testified that Torres told her not to worry and instructed her to return to her home because the police were going to arrest Perez. Assured by Torres's words, plaintiff

returned to her home thinking that Perez would be arrested for violating the active order of protection. It was plaintiff's expectation that Torres would call and inform her when Perez was arrested. The deadly encounter occurred when plaintiff found Perez at her doorway as she was putting out her garbage.

Absent a special relationship, a municipality is not subject to tort liability for its failure to furnish police protection to an individual citizen (*Cuffy v City of New York*, 69 NY2d 255, 260 [1987].) The elements of this special relationship are:

> "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*id.*).

Defendants and the plurality writing posit that there was insufficient evidence to support a finding of justifiable reliance on the part of plaintiff.

The issue of justifiable reliance was resolved in plaintiff's favor by the jury's answer to the following question on the verdict sheet:

> "After Carmen Valdez's telephone call to the Police Department 48th Precinct, did Carmen Valdez justifiably rely on the Police Department's statements when she stayed at her home with her children July 19, 1996, and when she opened her door to dispose of garbage the following evening, July 20, 1996"?

With regard to reliance, the *Cuffy* Court noted that

> "at the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced [her] either to relax [her] own vigilance or to forego other available avenues of protection" (*Cuffy* at 261).

In this case, the evidence before the jury was sufficient to support the jury's finding that plaintiff was induced to do both. In the first instance, she forwent going to a safe haven at her

grandmother's home and instead returned to her apartment as instructed by Police Officer Torres. She also relaxed her vigilance by opening the door as she was about to put the garbage out.

The plurality writing and defendants correctly cite *Cuffy* for the general proposition that a verbal assurance, without more, does not constitute a sufficient basis for the requisite justifiable reliance. I disagree, however, with their conclusion that this case is factually indistinguishable from *Cuffy*. On the contrary, the existence of a special duty is dependent upon the particular facts of each case (*see e.g. Betancur v City of New York*, 11 AD3d 266, 267 [2004], *lv denied* 4 NY3d 707 [2005]; *Jones v New York City Tr. Auth.*, 183 AD2d 658, 660 [1992].)

In the *Cuffy* case, Joseph Cuffy spoke with a police lieutenant about his violent downstairs tenants and stated that he would move his family out of their apartment if an arrest was not made. Cuffy was told by the lieutenant that he should not worry and that an arrest would be made or something else would be done "first thing in the morning" (*Cuffy* at 259). Hours after morning came and went, Cuffy's wife, Eleanor, and their sons were assaulted at their home by the tenants. The *Cuffy* Court found that the injuries could not be deemed to have resulted from justifiable reliance on the assurances of police protection that Cuffy had received (*id.* at 263). The Court reasoned that although Ms. Cuffy and one son "knew or should have known by midday that the promised police action would not be forthcoming, they remained in the house hours after any further reliance on those assurances could reasonably be deemed justified" (*id.*). In its reasoning, the Court noted that Eleanor Cuffy had reason to know danger still existed because she looked out of her window periodically throughout the day without seeing any police cars pull up in front of her house (*id.*).

Unlike Ms. Cuffy, plaintiff in this case could not have looked out her window or taken any other similar measure to ascertain that Torres had not arrested Perez. Moreover, the Cuffy family, unlike plaintiff, did not forgo an option to go to what they thought would be an alternative safe place *at the direction* of a police officer. Accordingly, the facts of *Cuffy* are distinguishable for purposes of a justifiable reliance analysis. I disagree with the plurality writing's premise that a special duty generally does not exist without "visible police conduct or action" at the victim's home or some similar site. Indeed, there was no such police conduct or action in *Sorichetti v City of New York* (65

NY2d 461 [1985]), a case in which the Court of Appeals found a special relationship where a mother sought the help of the police to protect her child from her assaultive husband who had taken the child to his home. In fact, a police lieutenant declined to send a patrol car to the husband's home and told the mother "to leave her phone number and to go home, and that he would call her if [the husband] showed up" (*id.* at 467). The husband assaulted and seriously injured the child. There, the Court of Appeals did not find the element of justifiable reliance to be lacking. In fact, I submit that the facts upon which the *Sorichetti* Court found justifiable reliance are less compelling than those set forth in this record.

I take this position based on the Court of Appeals's own analysis of *Sorichetti*. Specifically, in one of its 10 citations to *Sorichetti*, the *Cuffy* Court said the following:

> "In a line of cases culminating in *Sorichetti v City of New York* (65 NY2d 461), we recognized a narrow right to recover from a municipality for its negligent failure to provide police protection where a promise of protection was made to a particular citizen and, as a consequence, a 'special duty' to that citizen arose. Essential to recovery is proof that the plaintiff relied on the promise and that his reliance was causally related to the harm he suffered" (*Cuffy*, 69 NY2d at 258 [remaining citation omitted].)

As later reaffirmed by the Court, a special relationship in *Sorichetti* arose out of (1) the order of protection, (2) the City's knowledge of a specific danger, (3) the City's instructions to the mother, plus (4) her reasonable expectation of police protection (*Lauer v City of New York*, 95 NY2d 95, 104 n 2 [2000]). To reiterate, "justifiable reliance" is an element of a special relationship (*Cuffy*, 69 NY2d at 260). It is clear that *Cuffy* refines but does not supplant the holding of *Sorichetti*. Therefore, contrary to the plurality writing's view, *Sorichetti* stands as precedent for a special relationship analysis which includes the element of justifiable reliance.

"Evidence is legally insufficient to support a verdict if there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Lang v Newman*, 12 NY3d 868, 870 [2009] [internal quotation marks and citation omitted]). It follows, of course, that evidence is sufficient if supported by such a valid line of

reasoning. I respectfully submit that the facts of this case, measured against the four *Sorichetti* factors, enumerated above, provide a valid line of reasoning sufficient to support the jury's conclusion that there was a special relationship between plaintiff and the City of New York.

The concurring writing cites *McLean v City of New York* (12 NY3d 194 [2009]) for the proposition that even if plaintiff has established justifiable reliance there can be no liability "unless the failure of the police to take any action to arrest Perez was the failure to perform a ministerial act." Under *McLean*, the discretionary acts of a municipality may never be a basis for tort liability, while ministerial acts may support liability only where a special duty is found (*id.* at 202). On this point, I would disagree with any view that the provision of police protection is ipso facto a discretionary act. As noted above, a triggering event in this case was Perez's violation of the order of protection. When the police are made aware of a possible violation of an order of protection "they are obligated to respond and investigate, and their actions will be subject to a 'reasonableness' review in a negligence action" (*Sorichetti*, 65 NY2d at 470). It follows that the Court's application of this reasonableness standard in *Sorichetti* belies any argument that police conduct is discretionary in situations involving responses to reported violations of orders of protection.

Moreover, the *McLean* Court did not chart a new course in noting the distinct legal consequences of discretionary and ministerial municipal conduct. The Court articulated the discretionary/ministerial dichotomy in *Tango v Tulevech* (61 NY2d 34 [1983]) 18 months before it decided *Sorichetti*. Also, the concurring writing places seemingly undue emphasis on dicta in the concurring opinion of Chief Judge Lippman in *Dinardo v City of New York* (13 NY3d 872 [2009]). In the *Dinardo* concurrence the Chief Judge stated that

> "[u]nfortunately, under the rule announced in *McLean*, a plaintiff will never be able to recover for the failure to provide adequate police protection, even when the police voluntarily and affirmatively promised to act on that specific plaintiff's behalf and he or she justifiably relied on that promise to his or her detriment" (*id.* at 877).

I say the quoted language is dicta because neither *Dinardo* nor *McLean* involves police protection. For these reasons, I submit that *McLean* does not abrogate municipal liability based on a special relationship in a case involving police protection.

As set forth on the verdict sheet, the jury determined that after receiving plaintiff's telephone call on July 19, 1996, "the Police Department act[ed] with reckless disregard for the safety of others in not taking action on July 19 or July 20, 1996 to protect" plaintiff. The jury was charged that one acts with reckless disregard for the safety of others when he or she, with gross indifference to the rights or safety of others, engages in conduct that makes it probable that injury will occur. According to Torres's testimony, no telephone call from plaintiff was received on the July 19, 1996 date. No other police officer testified about receipt of the call. Hence, the record contains no evidence as to how the information about Perez was handled once received from plaintiff. Absent speculation, the jury was left with no basis for a determination as to whether defendants failed to arrest Perez out of gross indifference to the rights or safety of plaintiff or simple negligence. Therefore, viewing the evidence in the light most favorable to plaintiff and drawing every reasonable inference in her favor, there is no valid line of reasoning from which the jury could have rationally determined that defendants acted with reckless disregard for the safety of others.

Therefore, I would modify the judgment entered below only to the extent of vacating the jury's determination that defendants acted with reckless disregard for the safety of others and reducing the awards for noneconomic damages accordingly and affirm the judgment as so modified.

SAXE, J., concurs with CATTERSON, J.; ABDUS-SALAAM, J., concurs in a separate opinion; MAZZARELLI, J.P., and DEGRASSE, J., dissent in part in a separate opinion by DEGRASSE, J.

Judgment, Supreme Court, Bronx County, entered September 18, 2008, reversed, on the law, without costs, the verdict vacated and the complaint dismissed. Appeal from order, same court, entered March 14, 2008, dismissed, without costs, as subsumed in the appeal from the judgment.