================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 191
Jandy Coleson, &c., et al.,
          Appellants,
        v.
City of New York, et al.,
          Respondents.


          Sang J. Sim, for appellants.
          Susan Paulson, for respondents.


ABDUS-SALAAM, J.:

          In this negligence action, we must determine whether
the evidence submitted by plaintiffs in opposition to the City of
New York's summary judgment motion was sufficient to raise a

- 1 -

triable issue of fact as to the existence of a special relationship between plaintiffs and the City.  We hold that the evidence presented in this case was sufficient to defeat the motion, and we therefore reverse the order of the Appellate Division.

I.

Commencing in the year 2000, plaintiff Jandy Coleson suffered both verbal and physical abuse at the hands of her husband Samuel Coleson.  As a result, Coleson was jailed on a number of occasions and plaintiff obtained numerous orders of protection against him.  In May 2004, following an incident where Coleson was abusing drugs, plaintiff ordered Coleson to leave the apartment and she changed the locks.  On June 23, 2004, Coleson tried to force himself into the building and threatened to kill plaintiff and stab her with a screwdriver he was carrying. Plaintiff called the New York City Police Department (NYPD), but when they arrived on the scene, Coleson had already fled.  The officers, including one Officer Reyes, searched for Coleson with plaintiff's assistance.  Coleson was apprehended shortly before 10 a.m.

On the same date, plaintiff applied for another order of protection and was later transported by the police to the local precinct with her son.  Plaintiff testified in her deposition that while at the precinct, an officer told her that

"they had arrested [Coleson], he's going to be in prison for a while, [and that she should not] worry, [she] was going to be given protection."  She was escorted by the police to Safe Horizon, a non-profit organization that provides services to domestic violence victims, to meet with a counselor and receive other assistance.  That evening, at approximately 11 p.m., plaintiff received a follow-up phone call from Officer Reyes, who told her that Coleson "was in front of the judge" and that he was going to be "sentence[d]."  Reyes also "told [plaintiff] that everything was okay, that everything was in process, [and] that she was going to keep in contact with [her]."  This phone call lasted for approximately two hours.

Two days later, plaintiff went to pick up her son from his school, which was across from a car wash, when she saw Coleson.  Coleson approached her, stating that he wanted to speak with her.  He took out a knife and stabbed plaintiff in the back.  The child, who was seven years old at the time, testified at his deposition that he saw Coleson chasing plaintiff with a knife while plaintiff screamed for help.  The child hid behind a car, and a man who worked at the car wash took the child and locked him in a broom closet.  About five to ten minutes later the child came out of the closet and saw his mother on the ground in a pool of blood.

Plaintiff, on behalf of herself and her son, commenced this negligence action against the City of New York and the NYPD

(collectively the City).  Plaintiffs also asserted a claim for negligent infliction of emotional distress, arguing that the child was in the zone of danger during the incident.

The City moved for summary judgment dismissing the complaint, arguing that the statements Officer Reyes allegedly made to plaintiff were not definite enough to create justifiable reliance in order to establish a special relationship in satisfaction of the duty prong of plaintiffs' negligence cause of action.  Further, the City argued that the child was not in the zone of danger because he did not witness the attack on his mother.  In opposition, plaintiffs argued that a special duty existed between plaintiff and the City based on the NYPD's agreement to provide protection to her.  They also asserted that the child did witness the assault because he observed Coleson approach his mother with a knife, and although he was placed in a broom closet, he could hear what was occurring.

Supreme Court granted the City's motion for summary judgment (Coleson v City of New York, 2012 WL 10478836 [Sup Ct, Bronx County 2012]).  The court held that plaintiffs failed to establish the requirements for a special relationship because they failed "to demonstrate that the verbal assurance of protection at the precinct was followed by any visible police protection" and "fail[ed] to show any post arraignment promise of protection" (id. at *2).  The court also determined that the child was not in the zone of danger because he was locked in a

broom closet at the time of the incident.

The Appellate Division affirmed (Coleson v City of New York, 106 AD3d 474 [1st Dept 2013]), holding that "[i]n the absence of any evidence that defendants assumed an affirmative duty to protect plaintiff from attacks by her husband, [the City does] not owe a duty of care to plaintiff" (id. at 474, citing Valdez v City of New York, 18 NY3d 69 [2011]).  The court stated that the statements of the officers which plaintiff relied upon "were too vague to constitute promises giving rise to a duty of care" (106 AD3d at 475, citing Dinardo v City of New York, 13 NY3d 872, 874 [2009]).  Finally, the court concluded that based on the lack of a special relationship, the child's claim for negligent infliction of emotional distress should also be dismissed.

In a concurring opinion, two justices noted that although the majority's ruling is mandated under Valdez, "[i]f the City's statements in this case are not specific enough to find that [the City] assumed an affirmative duty to protect plaintiff, it is difficult to imagine any statements that would ever be specific enough" and "it seems that no court of this State will ever find a municipality to have a special duty toward a plaintiff unless the municipality affirmatively consents to assume such a duty" (106 AD3d at 477).

The Appellate Division granted plaintiffs' motion for leave to appeal to this Court and certified the question of

whether the order was properly made.


                              II.

          Liability for a claim that a municipality negligently
exercised a governmental function "turns upon the existence of a
special duty to the injured person, in contrast to a general duty
owed to the public" (Garrett v Holiday Inns, 58 NY2d 253, 261
[1983]; see Laratro v City of New York, 8 NY3d 79 [2006]; Cuffy v
City of New York, 9 NY2d 255 [1987]).  "[A] duty to exercise
reasonable care toward [a] plaintiff" is "born of a special
relationship between the plaintiff and the governmental entity"
(Pelaez v Seide, 2 NY3d 186, 198-199 [2004]).  This Court has
determined that a special relationship can be formed in three
ways:

> "(1) when the municipality violates a
> statutory duty enacted for the benefit of a
> particular class of persons;  (2) when it
> voluntarily assumes a duty that generates
> justifiable reliance by the person who
> benefits from the duty; or (3) when the
> municipality assumes positive direction in
> the face of a known blatant and dangerous
> safety violation"

(Pelaez, 2 NY3d at 199-200).  In Cuffy v City of New York (69
NY2d 255), we listed the requisite elements for a duty
voluntarily assumed:

> "(1) an assumption by the municipality,
> through promises or actions, of an
> affirmative duty to act on behalf of the
> party who was injured; (2) knowledge on the

> part of the municipality's agents that
> inaction could lead to harm; (3) some form of
> direct contact between the municipality's
> agents and the injured party; and (4) that
> party's justifiable reliance on the
> municipality's affirmative undertaking"

(id. at 260).  We noted that "the injured party's reliance is
. . . critical" (id. at 261).

Applying the Cuffy factors here, we conclude that
plaintiffs raised a triable issue of fact as to whether a special
relationship existed.  With regard to the first factor, a jury
could conclude that the police officers made promises to protect
plaintiff.  Plaintiff was notified by the police that Coleson was
arrested, that he was in front of a judge to be sentenced, would
be in jail for a while, and that the police would be in contact
with her.  As to the second factor, the police officers
conceivably knew that Coleson would harm plaintiff if he was not
apprehended, as evidenced by his arrest and the issuance of an
order of protection to plaintiff.  Given that plaintiff was told
by Officer Reyes that everything was in process and she would
keep in contact, there is an issue of fact as to whether the
police knew that their inaction could lead to harm.  The third
factor is easily met, as plaintiff had direct contact with the
police, by the police responding to her call about Coleson's
threats, making an arrest, escorting her to the police precinct,
and plaintiff's phone call with Officer Reyes.  Finally,
regarding a party's justifiable reliance on the municipality's
affirmative undertaking, given the assurances that plaintiff

received from Officer Reyes that Coleson was in jail and that he would be there for a while, a jury could find that it was reasonable for plaintiff to believe that Coleson would be jailed for the foreseeable future, and that the police would contact her if that turned out not to be the case.

The conduct of the police here was more substantial, involved, and interactive than the police conduct in Valdez. In Valdez v City of New York (18 NY3d 69), the plaintiff was shot by her estranged boyfriend, after, in an attempt to flee, she was advised by officers that she should go back into her apartment and that the police would locate and arrest her boyfriend. This Court concluded that the officer's statements to the plaintiff did not create a special relationship because "[i]t was not reasonable for [the plaintiff] to conclude, based on nothing more than the officer's statement that the police were going to arrest [her boyfriend] 'immediately,' that she could relax her vigilance indefinitely" (id. at 81).

Unlike in Valdez, plaintiff was told by the police that Coleson was going to be in prison for a while and that they would stay in contact with plaintiff. Contrary to the City's and the dissent's contention, these particular assertions were not vague (cf. Dinardo v City of New York, 13 NY3d at 874). This Court has stated that

> "at the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has

>lulled the injured party into a false sense
>of security and has thereby induced [him or
>her] either to relax [his or her] own
>vigilance or to forego other available
>avenues of protection"

(Cuffy, 9 NY2d at 261). The role that police officers play when responding to domestic violence victim's is critical in allowing victims to feel consoled and supported. We do not, as the dissent suggests, seek to discourage the police from being responsive to crime victims. Rather, the police should make assurances only to the extent that they have an actual basis for such assurances, and to the extent that such assurances will not lull a victim into a false sense of security. The statements made by Officer Reyes to plaintiff may have lulled her into believing that she could relax her vigilance for a reasonable period of time, certainly more than two days.

Whether a special relationship exists is generally a question for the jury (see De Long v County of Erie, 60 NY2d 296, 306 [1983]). On this record, plaintiffs raised a triable issue of fact as to whether a special relationship existed, that should be decided by a jury.

As the Appellate Division only addressed the issue of special relationship, remittal to that court to review the City's claim of governmental immunity is warranted.

III.

Plaintiffs argue that the child was in the zone of danger because, although he was in a closet at the time his mother was stabbed, he saw Coleson with the knife and while in the closet heard his mother's screams.  The City argues that the child was not in the zone of danger because he was in the closet and did not see his mother being stabbed.  "In order to recover for an alleged emotional injury based on the zone of danger theory, a plaintiff must establish that he suffered serious emotional distress that was proximately caused by the observation of a family member's death or serious injury while in the zone of danger" (Stamm v PHH Vehicle Mgmt Serv., LLC, 32 AD3d 784, 786 [1st Dept 2006], citing Bovsun v Sanperi, 61 NY2d 219 [1984]; see Trombetta v Conkling, 82 NY2d 549 [1993]).  We conclude that the child was not in the zone of danger because he was in a broom closet while his mother was stabbed, and thus neither saw the incident nor was immediately aware of the incident at the time it occurred.


IV.

In sum, the acts of the police officers in this case were sufficient to raise a triable issue of fact as to justifiable reliance.  Accordingly, the order of the Appellate Division should be modified in accordance with this opinion, without costs, the case remitted to the Appellate Division for consideration of issues raised but not determined on appeal to

that court, and as so modified, affirmed and the certified

question not answered upon the ground that it is unnecessary.

Coleson v City of New York

No. 191

PIGOTT, J.(dissenting in part):

The majority's opinion creates a paradox.  Under the guise of protecting victims of domestic violence by allowing them to recover in tort against a municipality for a police officer's vague promises and assurances during an emotionally charged and dangerous situation, the opinion encourages the police to forgo any meaningful communication or action that could be even _remotely_ construed as creating a special relationship between the complainant and police.[1]  In doing so, the majority retreats from our recent decisions in Valdez v City of New York (18 NY3d 69 [2011]), DiNardo v City of New York (13 NY3d 872 [2009]) and McClean v City of New York (12 NY3d 194 [2009]) where we reiterated the well-established rule that only an "affirmative undertaking" that creates justifiable reliance can justify holding a municipality liable for negligence in performing a governmental function (Cuffy v City of New York, 69 NY2d 255, 260 [1987]).

According to the majority, the police did four things

---

[1]  I do not suggest, as the majority asserts, that the majority "seek[s] to discourage police from being responsive to crime victims" (majority op, 9).  My point is that the majority's holding will have that _effect_.

that now expose the City to potential liability:  (1) they made promises to protect plaintiff; (2) they "conceivably knew" that plaintiff's husband, Samuel Coleson, would harm her if he was not apprehended because they had arrested him and the court issued an order of protection to the plaintiff; (3) plaintiff had direct contact with police because Officer Christine Reyes spoke with plaintiff on the telephone and advised her that everything was in process and she, Officer Reyes, would keep in contact; and (4) Officer Reyes advised the plaintiff that Coleson was in jail and that he would be there for a while, thus allowing plaintiff, who had a tumultuous and violent history with this man, to justifiably rely on this assurance to go about her daily life (majority op, at 7).  The majority now says that in doing these four things, the police may be exposing the City to liability.

Had the police actually made specific assurances as to how plaintiff would be protected, then certainly a question of fact would have been presented.  Here, however, plaintiff claims that a police officer told her at the station, after Coleson's arrest, that Coleson "was going to prison for a while, not to worry, [she] was going to be protected."  When asked at her deposition, she was unable to state what, if any, protection the police had promised to provide, nor did she ask.  Assuming, as we must, plaintiff's testimony to be true, it cannot be said that such a vaguely-worded statement, i.e., that plaintiff would be provided protection, without any indication as to the type of

protection to be provided, constituted an action by police "that would lull a plaintiff into a false sense of security or otherwise generate justifiable reliance" (DiNardo, 13 NY3d at 874; cf. Mastroianni v County of Suffolk, 91 NY2d 198, 205 [1997] [after responding to a call at the victim's residence upon a complaint that her estranged husband had allegedly had been inside her home, police remained across the street for an hour after having assured her that they would "do whatever they could" if she had further problems with him]; DeLong v County of Erie, 60 NY2d 296, 306 [1983] [assurance by 911 operator employed by the county that help would be at victim's home "right away", in response to victim's burglary-in-progress complaint, potentially played a part in victim's decision to remain in her home as opposed to seeking other assistance]).  The majority does not explain how this plaintiff could have justifiably relied upon such a vague offer of "protection," or how such a question could be answered by a jury without engaging in speculation, absent any specific assurances as to how that "protection" would have been provided.

Equally troubling is that the majority appears to have added to the justifiable reliance prong of the Cuffy test, namely, that police may make assurances "only to the extent that they have an actual basis for such assurances" (majority op, at 9 [emphasis supplied]).  Is it possible to make these situations any more difficult for the police and those they are called on to

protect?  Not only must the police watch what they say, they must also be prepared to back up what they say, no matter how vague the assurances may be.  For example, statements such as, "It's going to be okay," or "We'll send him away so he doesn't hurt you again" will undoubtedly be utilized in potential civil suits as examples of assurances that the police made that had no "actual basis."  Such statements are on the same spectrum as the vague promises of "protection" and to "keep in contact" that were made in this case.  The end result, of course, is that police will be deterred from providing any assurances to victims of domestic violence, those victims will be less than willing to cooperate in the prosecution of their significant others (or family members), and the cycle will continue, with victims in all likelihood returning to their abusers, all because the police were (justifiably) wary about making any comment that could be considered a promise of safety.

The majority claims that the 11:00 p.m. phone call that plaintiff received from Officer Reyes on the night of Coleson's arrest, when Officer Reyes allegedly told plaintiff that Coleson was "was in front of a judge" and was going to be "sentence[d]" and that police would "keep in contact with [plaintiff]," raised a triable issue of fact on the issue of justifiable reliance. This conclusion construes statements made by police apprising the victim of the status of the victim's complaint as potential assurances of protection upon which the majority claims a

plaintiff may justifiably rely.  Under the majority's holding, any status report akin to the one given in this case will expose a municipality to liability, even if, as in this case, the municipality has not made an affirmative undertaking.  Thus, the majority's holding will encourage law enforcement to provide victims of domestic violence, or any victim of violent crime, with as little information as possible out of concern that anything they say can and will be used against them (and their employer) in a potential civil suit.

According to the majority, the fact that Officer Reyes told plaintiff that her husband would be in prison for "a while" and that police would stay in contact with her distinguishes this case from <u>Valdez</u>, but there is little distinction since neither the plaintiff here nor the plaintiff in <u>Valdez</u> had reason to believe, based on statements by police, that she could relax her vigilance.  The officers in <u>Valdez</u> promised the plaintiff that the estranged boyfriend would be arrested "immediately," and we held that the plaintiff could not have justifiably relied on that statement in light of the fact that neither the police nor the plaintiff knew the boyfriend's whereabouts.  Here, the police did not mention how long Coleson would be detained, and it cannot be said that Officer Reyes's statement that she would "keep in contact" meant that Officer Reyes would contact plaintiff if and when Coleson was released, nor does plaintiff make that claim, so Officer Reyes's statement could not have lulled her into

inaction.

I would therefore answer the certified question in the

negative.

* * * * * * * * * * * * * * * * *

Order modified, without costs, in accordance with the opinion
herein, case remitted to the Appellate Division, First
Department, for consideration of issues raised but not determined
on the appeal to that court and, as so modified, affirmed, and
certified question not answered upon the ground that it is
unnecessary.  Opinion by Judge Abdus-Salaam.  Chief Judge Lippman
and Judges Graffeo and Rivera concur.  Judge Pigott dissents in
part in an opinion in which Judges Read and Smith concur.


Decided November 24, 2014