Pigott, J.
(dissenting in part). The majority’s opinion creates a paradox. Under the guise of protecting victims of domestic violence by allowing them to recover in tort against a municipality for a police officer’s vague promises and assurances during an emotionally charged and dangerous situation, the opinion encourages the police to forgo any meaningful communication or action that could be even remotely construed as creating a special relationship between the complainant and police.* In doing so, the majority retreats from our recent decisions in Valdez v City of New York (18 NY3d 69 [2011]), Dinardo v City of New York (13 NY3d 872 [2009]) and McLean v City of New York (12 NY3d 194 [2009]) where we reiterated the well-established rule that only an “affirmative undertaking” that creates justifiable reliance can justify holding a municipality liable for negligence in performing a governmental function (Cuffy v City of New York, 69 NY2d 255, 260 [1987]).
According to the majority, the police did four things that now expose the City to potential liability: (1) they made promises to protect plaintiff; (2) they “conceivably knew” that plaintiffs husband, Samuel Coleson, would harm her if he was not apprehended because they had arrested him and the court issued an order of protection to the plaintiff; (3) plaintiff had direct contact with police because Officer Christine Reyes spoke with plaintiff on the telephone and advised her that everything was in process and she, Officer Reyes, would keep in contact; and (4) Officer Reyes advised the plaintiff that Coleson was in jail and that he would be there for a while, thus allowing plaintiff, *485 who had a tumultuous and violent history with this man, to justifiably rely on this assurance to go about her daily life (majority op at 482). The majority now says that in doing these four things, the police may be exposing the City to liability.
Had the police actually made specific assurances as to how plaintiff would be protected, then certainly a question of fact would have been presented. Here, however, plaintiff claims that a police officer told her at the station, after Coleson’s arrest, that Coleson was “going to be in prison for a while, not to worry, [she] was going to be given protection.” When asked at her deposition, she was unable to state what, if any, protection the police had promised to provide, nor did she ask. Assuming, as we must, plaintiffs testimony to he true, it cannot be said that such a vaguely-worded statement, i.e., that plaintiff would be provided protection, without any indication as to the type of protection to be provided, constituted an action by police “that would lull a plaintiff into a false sense of security or otherwise generate justifiable reliance” (Dinardo, 13 NY3d at 874; cf. Mastroianni v County of Suffolk, 91 NY2d 198, 205 [1997] [after responding to a call at the victim’s residence upon a complaint that her estranged husband had allegedly been inside her home, police remained across the street for an hour after having assured her that they would “do whatever (they) could” if she had further problems with him]; De Long v County of Erie, 60 NY2d 296, 305 [1983] [assurance by 911 operator employed by the county that help would be at victim’s home “right away,” in response to victim’s burglary-in-progress complaint, potentially played a part in victim’s decision to remain in her home as opposed to seeking other assistance]). The majority does not explain how this plaintiff could have justifiably relied upon such a vague offer of “protection,” or how such a question could be answered by a jury without engaging in speculation, absent any specific assurances as to how that “protection” would have been provided.
Equally troubling is that the majority appears to have added to the justifiable reliance prong of the Cuffy test, namely, that police may make assurances “only to the extent that they have an actual basis for such assurances” (majority op at 483 [emphasis supplied]). Is it possible to make these situations any more difficult for the police and those they are called on to protect? Not only must the police watch what they say, they must also be prepared to back up what they say, no matter how vague the assurances may be. For example, statements such as, *486 “It’s going to be okay,” or “We’ll send him away so he doesn’t hurt you again” will undoubtedly be utilized in potential civil suits as examples of assurances that the police made that had no “actual basis.” Such statements are on the same spectrum as the vague promises of “protection” and to “keep in contact” that were made in this case. The end result, of course, is that police will be deterred from providing any assurances to victims of domestic violence, those victims will be less than willing to cooperate in the prosecution of their significant others (or family members), and the cycle will continue, with victims in all likelihood returning to their abusers, all because the police were (justifiably) wary about making any comment that could be considered a promise of safety.
The majority claims that the 11:00 p.m. phone call that plaintiff received from Officer Reyes on the night of Coleson’s arrest, when Officer Reyes allegedly told plaintiff that Coleson “was in front of [a] judge” and was going to be “sentence[d]” and that police would “keep in contact with [plaintiff],” raised a triable issue of fact on the issue of justifiable reliance. This conclusion construes statements made by police apprising the victim of the status of the victim’s complaint as potential assurances of protection upon which the majority claims a plaintiff may justifiably rely. Under the majority’s holding, any status report akin to the one given in this case will expose a municipality to liability, even if, as in this case, the municipality has not made an affirmative undertaking. Thus, the majority’s holding will encourage law enforcement to provide victims of domestic violence, or any victim of violent crime, with as little information as possible out of concern that anything they say can and will be used against them (and their employer) in a potential civil suit.
According to the majority, the fact that Officer Reyes told plaintiff that her husband would be in prison for “a while” and that police would stay in contact with her distinguishes this case from Valdez, but there is little distinction since neither the plaintiff here nor the plaintiff in Valdez had reason to believe, based on statements by police, that she could relax her vigilance. The officers in Valdez promised the plaintiff that the estranged boyfriend would be arrested “immediately,” and we held that the plaintiff could not have justifiably relied on that statement in light of the fact that neither the police nor the plaintiff knew the boyfriend’s whereabouts. Here, the police did not mention how long Coleson would be detained, and it cannot *487 be said that Officer Reyes’s statement that she would “keep in contact” meant that Officer Reyes would contact plaintiff if and when Coleson was released, nor does plaintiff make that claim, so Officer Reyes’s statement could not have lulled her into inaction.
I would therefore answer the certified question in the negative.
Chief Judge Lippman and Judges Graffeo and Rivera concur; Judge Pigott dissents in part in an opinion in which Judges Read and Smith concur.
Order modified, without costs, in accordance with the opinion herein, case remitted to the Appellate Division, First Department, for consideration of issues raised but not determined on the appeal to that court and, as so modified, affirmed, and certified question not answered upon the ground that it is unnecessary.

 I do not suggest, as the majority asserts, that the majority “seek[s] to discourage the police from being responsive to crime victims” (majority op at 483). My point is that the majority’s holding will have that effect.